UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAY FINKELSTEIN, derivatively on behalf of L&L Energy, Inc. | ) ) |
| Plaintiff, | ) No. C11-1910 RSL ) |
| v. | ) **DECLARATION OF RUDY A.** ) **ENGLUND IN SUPPORT** |
| DICKSON V. LEE, *et al.*, | ) **STIPULATED MOTION FOR STAY** ) |
| Defendants, | ) ) |
| and | ) ) |
| L&L ENERGY, INC., | ) ) |
| Nominal Defendant. | ) ) |

I, Rudy A. Englund, hereby declare as follows:

1.     I am a shareholder in the Seattle office of Lane Powell PC, counsel for Nominal Defendant L&L Energy, Inc.  I make this declaration in support of the Parties' Stipulated Motion for Stay on the basis of personal knowledge, and I am competent to testify to the matters stated herein.

2.     Attached hereto as Exhibit 1 is a true and correct copy of the Parties' September 19, 2014 Stipulation of Settlement and the exhibits referenced therein.

3.     Attached hereto as Exhibit 2 is a true and correct copy of the September 26, 2014 Order Preliminarily Approving Settlement and Providing for Notice entered in *Stouffer*

**DECLARATION OF RUDY A. ENGLUND IN SUPPORT OF STIPULATED MOTION FOR STAY- 1**
No. C11-1910 RSL
126372.0004/6149801.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

00001

1  *v. Dickson V. Lee*, et al., Case No. 11-0C-00352-1B (Nevada State Court).

2      I declare under penalty of perjury of the laws of the State of Washington and the

3  United States that the foregoing is true and correct.

4      Dated: September 30, 2014

5                                    *s/Rudy A. Englund*
6                                    Rudy A. Englund

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**DECLARATION OF RUDY A. ENGLUND IN**
**SUPPORT OF STIPULATED MOTION FOR STAY- 2**
No. C11-1910 RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

126372.0004/6149801.1

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on September 30, 2014 I caused to be served a copy of the foregoing **DECLARATION OF RUDY A. ENGLUND IN SUPPORT OF STIPULATED MOTION AND PROPOSED ORDER FOR STAY** on the following person(s) in the manner indicated below at the following addresses:

| | | |
|---|---|---|
| Clifford A. Cantor | ☑ | by **CM/ECF** |
| Law Offices of Clifford A. Cantor, P.C. | ☐ | by **Electronic Mail** |
| 627 208th Ave. S.E. | ☐ | by **Facsimile Transmission** |
| Sammamish, WA 98074-7033 | ☐ | by **First Class Mail** |
| Ph: 425-868-7813 | ☐ | by **Hand Delivery** |
| Fx: 425-732-3752 | ☐ | by **Overnight Delivery** |
| Email: cliff.cantor@outlook.com | | |

| | | |
|---|---|---|
| Nicholas I. Porritt | ☑ | by **CM/ECF** |
| Levi & Korsinsky LLP | ☐ | by **Electronic Mail** |
| 1101 30th Street NW | ☐ | by **Facsimile Transmission** |
| Suite 115 | ☐ | by **First Class Mail** |
| Washington, DC 20007 | ☐ | by **Hand Delivery** |
| Tel: (212) 363-7500 | ☐ | by **Overnight Delivery** |
| Fax: (212) 363-7171 | | |
| Email: nporritt@zlk.com | | |

DATED this 30th day of September, 2014 at Seattle, Washington.

*s/Rudy A. Englund*
Rudy A. Englund

**DECLARATION OF RUDY A. ENGLUND IN SUPPORT OF STIPULATED MOTION FOR STAY- 3**
No. C11-1910 RSL

126372.0004/6149801.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

00003

# EXHIBIT 1

00004

1  THE O'MARA LAW FIRM, PC
   DAVID C. O'MARA (Nevada Bar No. 8599)
2  311 East Liberty Street
   Reno, NV 89501
3  Telephone: (775) 323-1321
   Facsimile: (775) 323-4082
4
   ROBBINS ARROYO LLP
5  BRIAN J. ROBBINS
   KEVIN A. SEELY
6  MICHAEL J. NICOUD
   600 B Street, Suite 1900
7  San Diego, CA 92101
   Telephone: (619) 525-3990
8  Facsimile: (619) 525-3991

9  Attorneys for Plaintiff

10 [Additional counsel on signature page]

11        IN THE FIRST JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

12                        IN AND FOR CARSON CITY

13 LAREW P. STOUFFER, Derivatively on      )   Case No. 11 0C 00352 1B
14 Behalf of L & L ENERGY, INC.,           )
                                           )
15              Plaintiff,                  )   Dept. No. I
        v.                                 )
16                                          )
   DICKSON V. LEE, IAN ROBINSON,           )   **STIPULATION OF SETTLEMENT**
17 ROBERT W. LEE, SHIRLEY KIANG,           )
   DENNIS BRACY, SYD S. PENG,              )
18 EDWARD L. DOWD, JR., ANDREW M.          )
   LEITCH, ROBERT A. OKUN, NORMAN          )
19 MINETA, JOSEPH J. BORICH, JUNG MEI      )
   WANG, and DAVID LIN,                    )
20                                          )
              Defendants,                   )
21        -and-                             )
                                           )
22 L & L ENERGY, INC., a Nevada            )
   corporation,                            )
23                                          )
              Nominal Defendant.            )
24 _____)

25

26

27

28

1       This Stipulation of Settlement ("Stipulation"),[1] dated September 19, 2014, is entered into,

2 by and through their respective undersigned counsel, among and between: (i) Plaintiffs Larew P.

3 Stouffer ("Stouffer"), Jay Finkelstein ("Finkelstein"), Joseph D. Bessent ("Bessent"), and Loren

4 Giesbrecht ("Giesbrecht"), each individually and derivatively on behalf of L&L Energy, Inc.

5 ("L&L" or the "Company"); (ii) Individual Defendants Dickson V. Lee, Ian Robinson, Robert W.

6 Lee, Shirley Kiang, Dennis Bracy, Syd S. Peng, Edward L. Dowd, Jr., Andrew M. Leitch, Robert

7 A. Okun, Norman Mineta, Joseph J. Borich, Jung Mei Wang, David Lin, Mohan Datwani, Jingcai

8 Yang, James Schaeffer, Clayton Fong, and Edmund Moy; and (iii) nominal defendant L&L.  This

9 Stipulation is intended by the Parties to fully, finally, and forever compromise, resolve, discharge,

10 and settle the Released Claims against the Released Persons and dismiss the Actions with

11 prejudice, upon the terms and subject to the conditions set forth herein.

12 **I.      BACKGROUND OF THE ACTIONS AND SETTLEMENT NEGOTIATIONS**

13       **A.    Procedural History of the Actions**

14       L&L engages in coal mining, clean coal washing, coal coking, and coal wholesaling

15 businesses in the Yunnan and Guizhou Provinces in the People's Republic of China ("China").

16 On November 4, 2011, plaintiff Stouffer filed the first shareholder derivative action on behalf of

17 L&L in the First Judicial District Court of the State of Nevada in and for Carson City under the

18 caption *Stouffer v. Lee*, Case No. 11 0C 00352 1B ("*Stouffer* Action").  The complaint alleged,

19 among other things, that six of the Company's current and former officers and directors breached

20 their fiduciary duties to the Company in connection with the Company's disclosures regarding

21 aspects of the Company's financial health.  Specifically, the complaint alleged that the financial

22 statements: (i) inflated financial information; (ii) improperly classified assets; (iii) improperly

23 listed ownership of certain assets and subsidiaries; and (iv) exhibited inadequate internal financial

24 controls.

25       Immediately after filing the complaint, plaintiff Stouffer began serving the defendants in

26 the *Stouffer* Action.  Plaintiff Stouffer served all but two of the defendants, exhaustively

27

28 [1] All capitalized terms are defined in Section IV.1 below, unless otherwise noted.

00006

searching for service addresses for the remaining two defendants—Jung Mei Wang ("Wang") and David Lin ("Lin"). On February 13, 2012, after attempting to serve defendants Jung Mei Wang and David Lin and being informed that both defendants had moved to Taiwan, plaintiff Stouffer filed a Motion for Order Permitting Service by Publication, which was granted on March 15, 2012. Thereafter, recognizing that plaintiff Stouffer could move for default judgments against Wang and Lin, the remaining defendants filed a motion to preclude the entry of default on June 29, 2012.

On November 15, 2011, plaintiff Russell L. Bush ("Bush") filed a related shareholder derivative action against certain of the Individual Defendants in the U.S. District Court for the Western District of Washington, captioned *Bush v. Lee*, Case No. 2:11-cv-01910-RSL ("*Bush* Action"). The *Bush* Action was consolidated with the later-filed *Finkelstein* Action, and plaintiff Bush is no longer a party to the litigation.

Following the filing of a related federal securities action captioned *In re: L&L Energy, Inc. Securities Litig.*, Case No. C11-1423-RSL (W.D. Wash. filed Aug. 26, 2011) (the "Washington Securities Class Action"), the parties in the *Stouffer* Action met and conferred concerning the most efficient manner in which to litigate the derivative claims brought on L&L's behalf. On March 29, 2012, the parties agreed that, given the unique circumstances, the best interests of the Company and efficient and effective case management would best be served by deferring all proceedings and continuing all responsive dates in order to monitor the ruling on defendants' motion to dismiss the related Washington Securities Class Action. The parties filed a stipulation and proposed order to that effect on July 18, 2012, and the Court entered the order on July 23, 2012 (the "Stay Order").

On September 23, 2013, a second related federal securities fraud class action was filed in the U.S. District Court for the Southern District of New York, captioned *Buker v. L&L Energy, Inc.*, Case No. 1:13-CV-06704 ("New York Securities Class Action").

On October 18, 2013, plaintiff Bessent filed a related shareholder derivative action against certain of the Individual Defendants in the Washington Superior Court, King County, captioned

00007

*Bessent v. Lee,* Case No. 13-2-36158-2 KNT (Wash. Super. Ct. filed Sept. 23, 2013) ("*Bessent* Action").

On December 9, 2013, plaintiff Finklestein filed a related shareholder derivative action against certain of the Individual Defendants in the U.S. District Court for the Western District of Washington, captioned *Finklestein v. Lee,* Case No. 2:13-cv-02197RSL ("*Finkelstein* Action").

On December 20, 2013, plaintiff Giesbrecht filed a related shareholder derivative action against certain of the Individual Defendants in the U.S. District Court for the District of Nevada, captioned *Giesbrecht v. Lee,* Case No. 3:13-CV-00697-HDM-WGC ("*Giesbrecht* Action").

**B.     Mediation Efforts and Settlement Negotiations**

On September 27, 2012, counsel for plaintiff Stouffer sent a settlement demand letter to counsel for Defendants in order to explore whether settlement negotiations were possible and in the Company's best interests, and proposed a derivative settlement framework, which included a comprehensive set of corporate governance reforms.

On December 3, 2012, the Court in the Washington Securities Class Action dismissed the second amended complaint.  The parties stipulated that plaintiffs could file an amended complaint, which they did.  On December 3, 2013, the court in the Washington Securities Class Action denied the defendants' motion to dismiss the third amended complaint, lifting the Stay Order.  Counsel for plaintiffs coordinated with defense counsel and other derivative plaintiffs' counsel in an effort to streamline the derivative actions along productive lines.  Pursuant to those discussions, the Settling Parties agreed to participate in a global, in-person mediation before the Hon. Layn R. Phillips (ret.) (the "Mediator") on May 6, 2014.  On February 14, 2014, the Settling Parties agreed to, and filed in this action a Joint Stipulation to Temporarily Stay Litigation Pending Settlement Efforts in anticipation of the mediation.  Similar stipulations were filed in each of the other three derivative cases.

Each of the four derivative plaintiffs worked together at the mediation to achieve the best result for the Company.  Collectively, the attorneys for the four derivative plaintiffs are referred to herein as "Plaintiffs' Counsel."  In connection with the May 6, 2014 mediation, Plaintiffs' Counsel undertook a comprehensive analysis and proposed numerous reforms to the Company's

00008

corporate governance practices. During the mediation, Plaintiffs negotiated the corporate governance reforms with the Defendants, coming to an agreement to the essential terms of the reforms to be implemented, subject to certain minor modifications to tailor the reforms to be consistent and compatible with the Company, based on input from its board of directors. After establishing the corporate governance to be implemented, the Settling Parties were able to negotiate the remaining aspects of the settlement. After ten hours of mediation, the Settling Parties reached a settlement in principle, subject to the negotiation of minor details related to the execution of the settlement, and the exact language of certain of the corporate governance enhancements to be implemented.

In the weeks following the mediation, the Settling Parties and their respective counsel engaged in numerous additional discussions concerning the language forming the corporate governance reforms that L&L would adopt as part of the Settlement, and other details of the settlement implementation. The Settling Parties and their respective counsel spent significant work preparing, reviewing, negotiating, and ultimately agreeing upon the corporate governance reforms set forth in Exhibit A attached hereto and this Stipulation (the "Reforms"). As a result of these negotiations, the Settling Parties reached an agreement to settle the Actions upon the terms and subject to the conditions set forth in this Stipulation (the "Settlement").

**II.    PLAINTIFFS' COUNSEL'S INVESTIGATION AND RESEARCH, PLAINTIFFS' CLAIMS, AND THE BENEFITS OF SETTLEMENT**

Plaintiffs' Counsel conducted an extensive investigation relating to the claims and the underlying events alleged in the Actions including, but not limited to: (1) inspecting, analyzing, and reviewing L&L's public filings with the U.S. Securities and Exchange Commission ("SEC"), press releases, announcements, transcripts of investor conference calls, securities analysts' reports, advisories, media reports, and news articles; (2) researching the applicable law with respect to the claims asserted in the Actions and the potential defenses thereto; (3) conducting comprehensive damages analyses; (4) drafting and filing the various complaints in the Actions; (5) reviewing and analyzing the relevant pleadings in the securities class actions; (6) researching corporate governance issues and best practices, in particular issues relating to companies listed on

00009

1 U.S. stock exchanges whose primary operations are located in China, and comparing such to
2 L&L's governance structures and policies; (7) preparing mediation briefs; and (8) participating in
3 extensive settlement discussions with Defendants' counsel, including participation in a day-long,
4 in-person formal mediation and many follow-up settlement discussions. As a result of these
5 efforts, Plaintiffs believe the Actions have substantial merit.

6      Nonetheless, Plaintiffs and Plaintiffs' Counsel also recognize and acknowledge the
7 significant risk, expense, and length of continued proceedings necessary to prosecute the Actions
8 against the Individual Defendants through trial and through possible appeals. Plaintiffs' Counsel
9 also have taken into account the uncertain outcome and the risk of any litigation, especially in
10 complex cases such as the Actions, as well as the difficulties and delays inherent in such
11 litigation. This matter poses additional risks associated with being able to serve defendants and
12 collect any judgment against the Individual Defendants, especially those who do not reside in the
13 United States, and with the Individual Defendants' limited insurance, which was depleted by the
14 ongoing cost of defending the Actions and the Washington and New York Securities Class
15 Actions. Plaintiffs' Counsel also are mindful of the inherent problems of proof and possible
16 defenses to the claims alleged in such actions. Plaintiffs' Counsel have conducted a thorough
17 review and analysis of the relevant facts, allegations, defenses, and controlling legal principles,
18 and believe that the Settlement set forth in this Stipulation is fair, reasonable, and adequate, and
19 confers substantial benefits upon L&L and its shareholders. Based upon Plaintiffs' Counsel's
20 evaluation, Plaintiffs have determined that the Settlement is in the best interests of L&L and its
21 shareholders and have agreed to settle the Actions upon the terms and subject to the conditions set
22 forth herein.

23 **III.    DEFENDANTS' DENIAL OF WRONGDOING AND LIABILITY**

24      Defendants have denied and continue to deny they have committed, threatened, or
25 attempted to commit any violations of law or breached any duty owed to Plaintiffs, L&L, or its
26 shareholders. Nonetheless, Defendants have concluded that further litigation of the Actions
27 would be protracted and expensive, and that it is desirable for the Actions to be fully and finally
28 settled in the matter and upon the terms and conditions set forth in this Stipulation. Defendants

- 5 -

00010

have also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like the Actions. Defendants have, therefore, determined that it is desirable and beneficial that the Actions be settled in the manner and upon the terms and conditions set forth in this Stipulation. Further, Defendants acknowledge that the Settlement is fair, reasonable, adequate, and in the best interests of L&L and its shareholders.

Neither this Stipulation, nor any of its terms or provisions, nor entry of the Judgment, nor any document or exhibit referred or attached to this Stipulation, nor any action taken to carry out this Stipulation, is, may be construed as, or may be used as evidence of the validity of any of the Released Claims or an admission by or against Defendants of any fault, wrongdoing, or concession of liability whatsoever.

## IV.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiffs (on behalf of themselves and derivatively on behalf of L&L) and Defendants, each by and through their respective counsel, that, subject to Court approval, the Released Claims shall be finally and fully compromised, settled, and released, and the Actions shall be dismissed with prejudice, as to all Parties, upon the terms and subject to the conditions set forth herein as follows:

### 1.    Definitions

As used in this Stipulation, the following terms have the meanings specified below:

1.1    "Actions" means, collectively, *Stouffer v. Lee*, Case No. 11 0C 00352 1B (Nev. Jud. Dist. Ct. filed Nov. 4, 2011); *Bessent v. Lee*, Case No. 13-2-36158-2 KNT (Wash. Super. Ct. filed Oct. 18, 2013); *Finklestein v. Lee*, Case No. 2:13-cv-02197RSL (W.D. Wash. filed Dec. 9, 2013, initially filed as the *Bush* action on November 15, 2011), and *Giesbrecht v. Lee*, Case No. 3:13-CV-00697-HDM-WGC (D. Nev. filed Dec. 20, 2013).

1.2    "Court" means the First Judicial District Court of the State of Nevada in and for Carson City.

1.3    "Current L&L Shareholders" means any Person who owned L&L common stock as of the date of the execution of this Stipulation and who continue to hold their L&L common

- 6 -

00011

stock as of the date of Settlement Hearing, excluding the Individual Defendants, the officers and directors of L&L, members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which Individual Defendants have or had a controlling interest.

1.4    "Defendants" means collectively, nominal defendant L&L and the Individual Defendants.

1.5    "Effective Date" means the first date by which all of the events and conditions specified in paragraph 6.1 herein have been met and have occurred.

1.6    "Final" means the expiration of all time to seek appeal or other review of the Judgment, or if any appeal or other review of such Judgment is filed and not dismissed, after such Judgment is upheld on appeal in all material respects and is no longer subject to appeal, reargument, or review by writ of certiorari or otherwise.

1.7    "Individual Defendants" means Dickson V. Lee, Ian Robinson, Robert W. Lee, Shirley Kiang, Dennis Bracy, Syd S. Peng, Edward L. Dowd, Jr., Andrew M. Leitch, Robert A. Okun, Norman Mineta, Joseph J. Borich, Jung Mei Wang, David Lin, Mohan Datwani, Jingcai Yang, James Schaeffer, Clayton Fong, and Edmund Moy.

1.8    "Judgment" means the [Proposed] Final Judgment and Order of Dismissal to be rendered by the Court, substantially in the form of Exhibit E attached hereto.

1.9    "New York Securities Class Action" means the federal securities fraud class action that was filed in the U.S. District Court for the Southern District of New York, captioned *Buker v. L&L Energy, Inc.*, Case No. 1:13-CV-06704 (S.D.N.Y. filed Sept. 23, 2013).

1.10    "Person" means an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assignees.

1.11    "Plaintiffs" means, collectively, Larew P. Stouffer, Jay Finkelstein, Joseph D. Bessent, and Loren Giesbrecht, individually and derivatively on behalf of L&L.

00012

1.12 "Plaintiffs' Counsel" means any counsel who have appeared on behalf of any of the Plaintiffs in the Actions.

1.13 "Related Actions" means, collectively, the *Finklestein* Action, the *Bessent* Action, and the *Giesbrecht* Action.

1.14 "Released Claims" means any and all suits, claims, debts, demands, rights, liabilities, and causes of action of every nature, including both known and Unknown Claims (as defined in paragraph 1.19 below), that were or could have been brought, existing directly or derivatively on behalf of L&L, by Plaintiffs as shareholders or any other current L&L shareholder, or by L&L, that arise out of or relate to: (i) the allegations asserted in the Actions; or (ii) the Settlement, except for any claims to enforce the Settlement. "Released Claims" does not include (i) claims alleged in the Washington Securities Class Action; (ii) claims alleged in the New York Securities Class Action; or (iii) potential claims that L&L may have against Dickson V. Lee for reimbursement of advanced defense costs.

1.15 "Released Persons" means each of the Defendants and their past or present agents, officers, directors, attorneys, accountants, auditors, advisors, insurers, co-insurers, reinsurers, spouses, immediate family members, marital communities, heirs, executors, personal representatives, estates, administrators, trusts, predecessors, successors, and assigns or other individual or entity in which any Defendant has a controlling interest, and each and all of their respective past and present officers, directors, employees, agents, affiliates, parents, subsidiaries, divisions, attorneys, accountants, auditors, advisors, insurers, co-insurers, re-insurers, heirs, executors, personal representatives, estates, administrators, trusts, predecessors, successors, and assigns. "Released Person" means, individually, any of the Released Persons.

1.16 "Releasing Persons" means Plaintiffs (both individually and derivatively on behalf of L&L), any other current L&L Shareholder on behalf of L&L, and Plaintiffs' Counsel. "Releasing Person" means, individually, any of the Releasing Persons.

1.17 "Settlement Hearing" means the hearing set by the Court to consider final approval of the Settlement.

- 8 -

00013

1.18 "Settling Parties" or "Parties" means, collectively, each and all of the derivative Plaintiffs (on behalf of themselves and derivatively on behalf of L&L) and Defendants. "Settling Party" or "Party" means, individually, any of the Settling Parties.

1.19 "Unknown Claims" means any Released Claim(s) which Plaintiffs or Defendants do not know of or suspect to exist in his, her, or its favor at the time of the release of the Released Persons. With respect to any and all Released Claims, the Settling Parties agree that upon the Effective Date, the Settling Parties expressly waive the provisions, rights and benefits conferred by or under California Civil Code section 1542, or any other law of the United States or any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to section 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Settling Parties acknowledge that they may hereafter discover facts in addition to or different from those now known or believed to be true by them, with respect to the subject matter of the Released Claims, but it is the intention of the Settling Parties to completely, fully, finally, and forever compromise, settle, release, discharge, and extinguish any and all Released Claims, known or unknown, suspected or unsuspected, contingent or absolute, accrued or unaccrued, apparent or unapparent, which do now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts. The Settling Parties acknowledge that the foregoing waiver was separately bargained for and is a key element of this Stipulation of which this release is a part.

1.20 "Washington Securities Class Action" means the consolidated securities action formerly pending in the U.S. District Court for the Western District of Washington captioned *In re L&L Energy Inc. Sec. Litigation*, Case No. 2:11-cv-01423-RSL, which was transferred to the U.S. District Court for the Southern District of New York on May 29, 2014.

00014

**2.     Terms of the Settlement**

2.1     L&L shall, within thirty calendar days after entry of the Judgment, formally express and/or implement and maintain in substance the corporate governance reforms, additions, amendments, or formalizations identified in Exhibit A attached hereto, for a period of no less than seven years.

2.2     Defendants have agreed to seek reimbursement from L&L's insurers for any covered costs and expenses required by the Settlement that they incur.

2.3     Defendants acknowledge and agree that the corporate governance reforms, additions, amendments, or formalizations identified in Exhibit A attached hereto are extensive and confer substantial benefits upon L&L and its shareholders.  Defendants also acknowledge that the prosecution and settlement of the Actions were substantial factors in their decision to adopt and/or implement the corporate governance reforms set forth in Exhibit A, and in the settlement of the Washington Securities Class Action and the New York Securities Class Action.

**3.     Approval and Notice**

3.1     Promptly after execution of this Stipulation, Plaintiffs shall submit this Stipulation together with its exhibits to the Court, and shall apply for entry of the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), substantially in the form of Exhibit B attached hereto, requesting: (i) preliminary approval of the Settlement as set forth in this Stipulation; (ii) approval of the form and manner of providing notice of the Settlement to Current L&L Shareholders; and (iii) a date for the Settlement Hearing.

3.2     Notice to Current L&L Shareholders shall consist of the Notice of Pendency and Proposed Settlement of Shareholder Derivative Actions ("Notice") and the Summary Notice of Pendency and Proposed Settlement of Shareholder Derivative Actions ("Summary Notice"), substantially in the form attached hereto as Exhibits C and D, respectively, and shall be provided to Current L&L Shareholders as follows:

(a)     ten calendar days after the entry of the Preliminary Approval Order, L&L shall issue a press release announcing the Settlement, including instructions to Current L&L Shareholders on how to access the Notice and Stipulation, and referring Current L&L

shareholders to the websites of Robbins Arroyo LLP, Levi & Korsinsky LLP, Gainey McKenna & Egleston, Harwood Feffer LLP, and L&L for more information; and

(b) ten calendar days after the entry of the Preliminary Approval Order, Robbins Arroyo LLP, Levi & Korsinsky LLP, Gainey McKenna & Egleston, and Harwood Feffer LLP shall post copies of the Notice and this Stipulation on their firms' websites;

(c) ten calendar days after the entry of the Preliminary Approval Order, L&L shall post copies of the Notice and this Stipulation on its website;

(d) ten calendar days after the entry of the Preliminary Approval Order, L&L shall cause the Summary Notice to be published once in the *Investor's Business Daily*.

3.3 Prior to the Settlement Hearing, Defendants' counsel and Plaintiffs' Counsel shall serve on counsel in the Actions and file with the Court an appropriate affidavit or declaration with respect to posting and publishing the Notice and Summary Notice.

3.4 L&L's insurer shall be responsible for the reasonable and necessary costs of publishing the Summary Notice. If the Court requires additional notice, the reasonable and necessary costs of such additional notice will be borne by L&L through its insurer.

3.5 The Settling Parties believe the content and manner of the Notice constitutes adequate and reasonable notice to Current L&L Shareholders pursuant to applicable law and due process.

3.6 Pending the Court's determination as to final approval of the Settlement, Plaintiffs and Current L&L Shareholders are barred and enjoined from commencing, prosecuting, instigating, or in any way participating in the commencement or prosecution of any action asserting any Released Claim against any of the Released Persons.

3.7 Within five calendar days of entry of the Judgment approving the Settlement of this action, plaintiffs Finkelstein, Bessent, and Giesbrecht shall file voluntary dismissals in the Related Actions dismissing the Related Actions with prejudice, and shall use their reasonable best efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things, reasonably necessary, proper, or advisable under applicable laws, regulations, and agreements to secure such dismissals with prejudice.

- 11 -

00016

### 4. Attorneys' Fees and Expenses

4.1    In recognition of the substantial benefits conferred upon L&L as a direct result of the prosecution and Settlement of the Actions, and subject to Court approval, L&L's insurer shall pay Plaintiffs' Counsel attorneys' fees and expenses in the agreed-to amount of $795,000 (the "Fee and Expense Amount"). The Fee and Expense Amount was negotiated with the help of the Mediator after the Settling Parties had substantially negotiated the material terms of the Settlement and was the result of arm's-length negotiations between the Settling Parties.

4.2    The Fee and Expense Amount shall be paid to Robbins Arroyo LLP, as receiving agent for all of Plaintiffs' Counsel, ten business days after the Court enters the Preliminarily Approval Order, subject to court approval, and Plaintiffs' Counsel's joint and several obligation to refund some or all of the Fee and Expense Amount if, and to the extent, it is reversed or modified on appeal and/or the Settlement does not become Final. Except as otherwise provided herein, each of the Parties shall bear his, her, or its own fees and costs.

4.3    The Settling Parties further stipulate that Plaintiffs' Counsel may apply to the Court for an incentive amount of up to $2,000 for each of the Plaintiffs (the "Incentive Amount"), only to be paid upon Court approval, and to be paid from the Fee and Expense Amount, in recognition of Plaintiffs' participation and effort in the prosecution of the Actions. The failure of the Court to approve any requested Incentive Amount, in whole or in part, shall have no effect on the Settlement set forth in this Stipulation. Neither L&L nor any of the Individual Defendants shall be liable for any portion of any Incentive Amount.

### 5. Releases

5.1    Upon the Effective Date, Plaintiffs, L&L, and Current L&L Shareholders shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled, released, discharged, extinguished, and dismissed with prejudice the Released Claims against the Released Persons; provided, however, that such release shall not affect any claims to enforce the terms of this Stipulation or the Settlement.

5.2    Upon the Effective Date, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled, released,

- 12 -

00017

discharged, extinguished, and dismissed with prejudice all claims (including Unknown Claims), arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Actions or the Released Claims against Plaintiffs and Plaintiffs' Counsel; provided, however, that such release shall not affect any claims to enforce the terms of this Stipulation or the Settlement.

**6.     Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

6.1     The Settlement shall be conditioned on the occurrence of all of the following events:

(a)     Court approval of the Settlement following notice to Current L&L Shareholders and the Settlement Hearing;

(b)     entry of the Judgment in the *Stouffer* Action;

(c)     dismissal of the Related Actions with prejudice;

(d)     payment to Plaintiffs' Counsel of the Fee and Expense Amount, including the Incentive Amount, as approved by the Court; and

(e)     the passing of the date upon which the Judgment becomes Final.

6.2     If any of the conditions listed in paragraph 6.1 are not met, this Stipulation and any Settlement documentation shall be null and void and of no force and effect. In the event that any of the conditions listed in paragraph 6.1 are not met, the Settling Parties shall be restored to their positions on the date immediately prior to the execution date of this Stipulation, this Stipulation shall not be deemed to constitute an admission of fact by any Settling Party, and neither the existence of this Stipulation, nor its contents shall be admissible in evidence or be referred to for any purposes in the Actions or in any litigation or judicial proceeding. Further, all releases delivered in connection with this Stipulation shall be null and void.

**7.     Bankruptcy**

7.1     In the event any proceedings by or on behalf of L&L, whether voluntary or involuntary, are initiated under any chapter of the U.S. Bankruptcy Code, including any act of receivership, asset seizure, or similar federal or state law action ("Bankruptcy Proceedings"), the Settling Parties agree to use their reasonable best efforts to obtain all necessary orders, consents,

- 13 -

00018

releases, and approvals for effectuation of the Stipulation and Court approval of the Settlement in a timely and expeditious manner.

7.2    If any Bankruptcy Proceedings by or on behalf of L&L are initiated prior to the payment of the Fee and Expense Amount, the Settling Parties agree that all dates and deadlines in the Actions, if any, or any dates and deadlines associated with the appeal of the Actions, if any, will be extended for such periods of time as are necessary to attempt to obtain necessary orders, consents, releases, and approvals from the bankruptcy court to carry out the terms and conditions of this Settlement.

**8.    Miscellaneous Provisions**

8.1    The Settling Parties: (i) acknowledge that it is their intent to consummate this Stipulation; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation.

8.2    In the event that any part of the Settlement is found to be unlawful, void, unconscionable, or against public policy by a court of competent jurisdiction, any Settling Party shall have the option to withdraw from the Settlement.

8.3    The Settling Parties agree that terms of the Settlement were negotiated in good faith by the Parties, and reflect a Settlement that was reached voluntarily after consultation with competent legal counsel. In addition, the Settling Parties agree that during the course of the Actions the Settling Parties and their respective counsel at all times acted professionally and in compliance with Rule 11 of the Nevada Rules of Civil Procedure and Rule 11 of the Federal Rules of Civil Procedure (together, "Rule 11") and any other court rule or statute with respect to any claims or defenses in the Actions. Accordingly, the Judgment in the Actions will contain a finding that during the course of the litigation, the Settling Parties and their respective counsel at all times complied with the requirements of Rule 11 and any other court rule or statute with respect to any claims or defenses in the Actions. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Actions was brought or defended in bad faith or without a reasonable basis.

00019

1     8.4    The existence of or the provisions contained in this Stipulation shall not be deemed

2 to prejudice in any way the respective positions of the Settling Parties with respect to the Actions,

3 shall not be deemed a presumption, a concession, or admission by any of the Settling Parties of

4 any fault, liability, or wrongdoing as to any facts, claims, or defenses that have been or might

5 have been alleged or asserted in the Actions or with respect to any of the claims settled in the

6 Actions, or any other action or proceeding, and shall not be interpreted, construed, deemed,

7 invoked, offered, or received in evidence or otherwise used by any person in the Actions, or in

8 any other action or proceeding, except for any litigation or judicial proceeding arising out of or

9 relating to this Stipulation or the Settlement whether civil, criminal, or administrative, for any

10 purpose other than as provided expressly herein.

11     8.5    The Exhibits to this Stipulation are material and integral parts hereof and are fully

12 incorporated herein by this reference. This Stipulation and the exhibits attached hereto represent

13 the complete and final resolution of all disputes between the Settling Parties with respect to the

14 Actions, constitute the entire agreement among the Settling Parties, and supersede any and all

15 prior negotiations, discussions, agreements, or undertakings, whether oral or written, with respect

16 to such matters.

17     8.6    This Stipulation may be modified or amended only by a writing signed by the

18 signatories hereto.

19     8.7    This Stipulation shall be deemed drafted equally by all Settling Parties hereto.

20     8.8    This Stipulation and the Settlement contemplated by it shall be governed by, and

21 construed in accordance with, the laws of the State of Nevada, without regard to Nevada's conflict

22 of law rules.

23     8.9    No representations, warranties, or inducements have been made to any of the

24 Parties concerning this Stipulation or its exhibits other than the representations, warranties, and

25 covenants contained and memorialized in such documents.

26     8.10    Each counsel or other Person executing this Stipulation or its exhibits on behalf of

27 any of the Settling Parties hereby warrants that such Person has the full authority to do so.

28

00020

8.11  This Stipulation shall be binding upon and inure to the benefit of the Settling Parties and their respective agents, executors, heirs, successors, and assigns.

8.12  This Stipulation may be executed in counterparts by the signatories hereto, including by facsimile, and as so executed shall constitute one agreement.

8.13  All proceedings in the Actions shall be stayed, except as provided in this Stipulation. Other than seeking approval of the Settlement or as permitted herein or as may be expressly required by the Court, the Settling Parties agree that they will not take any action, take any discovery, or make any filings in the Actions other than those contemplated by this Stipulation.

8.14  The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation, and the Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation.

IN WITNESS WHEREOF, the Parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, dated this 19 day of September, 2014.

## AFFIRMATION

### (Pursuant to NRS 239B.030)

The undersigned does hereby affirm that the preceding document filed in the above referenced matter does not contain the social security number of any person.

DATED: 9/19 , 2014

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
KEVIN A. SEELY
MICHAEL J. NICOUD

_____
KEVIN A. SEELY

600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

- 16 -

00021

DUNNAM & DUNNAM, L.L.P.
HAMILTON LINDLEY
4125 West Waco Drive
PO Box 8418
Waco, TX 76714
Telephone: (254) 753-6437
Facsimile: (254) 753-7434

THE O'MARA LAW FIRM, P.C.
David C. O'Mara
311 East Liberty Street
Reno, NV 89501
Telephone: (775) 323-1321
Facsimile: (775) 323-4082

*Counsel for Plaintiff Stouffer*

DATED: _____, 2014

LEVI & KORSINKY, LLP
NICHOLAS I. PORRITT
ADAM M. APTON


_____
NICHOLAS I. PORRITT

1101 30th Street N.W., Suite 115
Washington, D.C. 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121

LAW OFFICES OF CLIFFORD A. CANTOR, P.C.
CLIFF CANTOR
627 208th Ave. SE
Sammamish, WA 98074
Telephone: (425) 868-7813
Facsimile: (425) 732-3752

*Counsel for Plaintiff Finklestein*

DATED: _____, 2014

HARWOOD FEFFER LLP
ROBERT I. HARWOOD
DANIELLA QUITT


_____
ROBERT I. HARWOOD

488 Madison Avenue
New York, NY 10022
Telephone: (212) 935-7400
Facsimile: (212) 753-3630

- 17 -

00022

```
1
2    DUNNAM & DUNNAM, L.L.P.
     HAMILTON LINDLEY
3    4125 West Waco Drive
     PO Box 8418
4    Waco, TX 76714
     Telephone: (254) 753-6437
5    Facsimile: (254) 753-7434

6    THE O'MARA LAW FIRM, P.C.
     David C. O'Mara
7    311 East Liberty Street
     Reno, NV 89501
8    Telephone: (775) 323-1321
     Facsimile: (775) 323-4082

9                               Counsel for Plaintiff Stouffer

10   DATED: _____, 2014         LEVI & KORSINKY, LLP
                                 NICHOLAS I. PORRITT
11                               ADAM M. APTON

12

13   _____
                               NICHOLAS I. PORRITT
14
                               1101 30th Street N.W., Suite 115
15                             Washington, D.C. 20007
                               Telephone: (202) 524-4290
16                             Facsimile: (202) 333-2121

17                             LAW OFFICES OF CLIFFORD A. CANTOR, P.C.
                               CLIFF CANTOR
18                             627 208th Ave. SE
                               Sammamish, WA 98074
19                             Telephone: (425) 868-7813
                               Facsimile: (425) 732-3752

20
21                             Counsel for Plaintiff Finklestein

22   DATED: _____, 2014        HARWOOD FEFFER LLP
                                ROBERT I. HARWOOD
23                              DANIELLA QUITT

24   _____
                               DANIELLA QUITT
25
                               488 Madison Avenue
26                             New York, NY 10022
                               Telephone: (212) 935-7400
27                             Facsimile: (212) 753-3630

28
```

- 17 -

00023

BADGLEY MULLINS TURNER PLLC
DUNCAN C. TURNER
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, WA 98104
Telephone: (206) 621-6566
Facsimile: (206) 621-9686

*Counsel for Plaintiff Bessent*

GAINEY MCKENNA & EGLESTON
THOMAS J. MCKENNA
GREGORY M. EGLESTON

DATED: 9/19, 2014

THOMAS J. MCKENNA

440 Park Avenue South, 5th Floor
New York, NY 10016
Telephone: (212) 983-1300
Facsimile: (212) 983-0383

MATTHEW L. SHARP, LTD.
MATTHEW L. SHARP
432 Ridge Street
Reno, NV 89501
Telephone: (775) 324-1500
Facsimile: (775) 284-0675

*Counsel for Plaintiff Giesbrecht*

DATED: _____, 2014

ARMSTRONG TEASDALE, LLP
RICHARD G. CAMPBELL

RICHARD G. CAMPBELL

50 West Liberty, Suite 950
Reno, NV 89501
Telephone: (775) 322-7400
Facsimile: (775) 322-9049

CALFO HARRIGAN LEYH & EAKES LLP
TIMOTHY G. LEYH
SHANE PATRICK CRAMER
999 Third Ave., Suite 4400
Seattle, WA 98104
Telephone: (206) 623-1700
Facsimile: (206) 623-8717

*Counsel for defendants Dickson V. Lee, Ian
Robinson, Robert W. Lee, Shirley Kiang, Dennis*

- 18 -

00024

BADGLEY MULLINS TURNER PLLC
DUNCAN C. TURNER
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, WA 98104
Telephone: (206) 621-6566
Facsimile: (206) 621-9686

*Counsel for Plaintiff Bessent*

GAINEY MCKENNA & EGLESTON
THOMAS J. MCKENNA
GREGORY M. EGLESTON

_____
THOMAS J. MCKENNA

440 Park Avenue South, 5th Floor
New York, NY 10016
Telephone: (212) 983-1300
Facsimile: (212) 983-0383

MATTHEW L. SHARP, LTD.
MATTHEW L. SHARP
432 Ridge Street
Reno, NV 89501
Telephone: (775) 324-1500
Facsimile: (775) 284-0675

*Counsel for Plaintiff Giesbrecht*

DATED: _____, 2014

ARMSTRONG TEASDALE, LLP
RICHARD G. CAMPBELL

DATED: Sept. 19, 2014

_____
RICHARD G. CAMPBELL
Shane Cramer (pro hac)

50 West Liberty, Suite 950
Reno, NV 89501
Telephone: (775) 322-7400
Facsimile: (775) 322-9049

CALFO HARRIGAN LEYH & EAKES LLP
TIMOTHY G. LEYH
SHANE PATRICK CRAMER
999 Third Ave., Suite 4400
Seattle, WA 98104
Telephone: (206) 623-1700
Facsimile: (206) 623-8717

*Counsel for defendants Dickson V. Lee, Ian
Robinson, Robert W. Lee, Shirley Kiang, Dennis*

- 18 -

00025

Bracy, Syd S. Peng, Edward L. Dowd, Jr., Andrew
M. Leitch, Robert A. Okun, Norman Mineta, and
Joseph J. Borich, Edmund Moy, Jingcai Yang,
Clayton Fong, Mohan Datwani, and James
Schaeffer

GIBSON, DUNN & CRUTCHER LLP
ARIC H. WU
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-3820
Facsimile: (212) 351-5344

*Additional Counsel for Defendant Dickson V. Lee*

LANE POWELL PC
DOUGLAS W. GREENE
RUDY A. ENGLUND

RUDY A. ENGLUND
Douglas W. Greene
1420 Fifth Avenue, Suite 4100
Seattle, WA 98101
Telephone: (206) 223-7000
Facsimile: (206) 223-7107

*Counsel for nominal defendant L&L Energy, Inc.*

DATED: 9/19, 2014

- 19 -

00026

## INDEX OF EXHIBITS

| Exhibit No. | Description | No. of Pages |
|:---:|---|:---:|
| A | Substantial Benefits and Corporate Governance Term Sheet | 14 |
| B | [Proposed] Order Preliminarily Approving Settlement and Providing for Notice | 6 |
| C | Notice of Pendency and Proposed Settlement of Shareholder Derivative Actions | 10 |
| D | Summary Notice of Pendency and Proposed Settlement of Shareholder Derivative Actions | 3 |
| E | [Proposed] Final Judgment and Order of Dismissal | 5 |

956134

00027

# EXHIBIT A

# EXHIBIT A

EXHIBIT A – Substantial Benefits and Corporate Governance Term Sheet

<u>CORPORATE GOVERNANCE REFORMS FOR L&L ENERGY, INC.</u>

This document outlines the corporate governance reforms that comprise the settlement of the Derivative Actions[1] filed by multiple shareholders on behalf of L&L Energy, Inc. ("L&L" or the "Company"). Section I discusses each of the corporate governance reforms that the Derivative Actions caused, or were a substantial factor in causing, to be implemented. Section II addresses future changes that Plaintiffs believe will strengthen the Company's corporate governance going forward—critical changes for the Company at this pivotal time that will help re-attract investors to L&L. The Company will keep all of the changes identified herein for at least seven years, unless specified otherwise.

**I.    CORPORATE GOVERNANCE CHANGES MADE IN RESPONSE TO THE DERIVATIVE ACTIONS**

Plaintiffs appreciate the corporate governance changes that have been made thus far in response to the Derivative Actions, starting with the *Stouffer* Action. The Company acknowledges that the Derivative Actions caused or were a substantial factor in causing the following reforms to be made:

**A.    Improvements to Internal Control over Financial Reporting**

1.    "Improved the design and documentation related to monitoring multiple levels of review over financial statements included in the Company's SEC forms 10-Q and 10-K;

2.    Expanded the design and assessment test work over the monitoring function of entity level controls;

---

[1]    "Derivative Actions" refers collectively to *Stouffer v. Lee*, Case No. 11 0C 00352 1B filed on November 4, 2011, in the First Judicial District Court of the State of Nevada, in and for Carson City ("*Stouffer* Action"), *Finklestein v. Lee*, No. 2:13-cv-02197RSL filed on December 9, 2013, in the U.S. District Court for the Western District of Washington, *Bessent v. Lee*, 13-236158-2KNT filed on October 18, 2013 in the State of Washington, King County, and *Giesbrecht v. Lee*, No. 13-cv-00697, filed on December 20, 2013 in the United States District Court for the District of Nevada.

- 1 -

00029

3.  Enhanced documentation retention policies over test work related to our continuous management assessments of internal control over financial reporting and will modify or implement if necessary, any additional controls or procedures that may be required to ensure the continued integrity of our effectiveness;

4.  Expanded documentation practices and policies related to various key controls to provide support and audit trails for both internal management assessment as well as external auditor testing; and

5.  Improved the design and documentation related to multiple levels of review over financial statements included in the Company's quarterly SEC form 10-Q."[2]

**B.    Board Composition**

L&L announced that defendant Robert Lee ("R. Lee") resigned from the Company's Board of Directors.[3]

**C.    Further Improvements to Internal Controls over Financial Reporting**

The Company announced corporate governance changes on this date that were identical to those announced on December 12, 2011.[4] When the Company announced the changes in December 2011, it also stated that it believed the deficiencies would be fully remediated by the reporting period of October 31, 2011.[5] The Company announced on March 12, 2012, that it was continuing to improve its internal controls and now expected to have the remediation completed by April 30, 2012.[6]

---

[2]    L&L Energy, Inc., Quarterly Report (Form 10-Q) at 32-33 (Dec. 12, 2011).

[3]    Press Release, L&L Energy, Inc., "Edmund Moy Elected to the Company's Board of Directors'" (Dec. 30, 2011).

[4]    L&L Energy, Inc. Quarterly Report (Form 10-Q) at 34 (Mar. 12, 2012).

[5]    L&L Energy, Inc., Quarterly Report (Form 10-Q) at 33 (Dec. 12, 2011).

[6]    L&L Energy, Inc. Quarterly Report (Form 10-Q) at 34 (Mar. 12, 2012).

**D.    Additional Improvements to Internal Controls over Financial Reporting**

The Company announced it was still having difficulties maintaining effective controls and was continuing to work on improvements, including the recruitment of additional professionals, including CPAs, a CIA, an experienced PhD who is a quantitative operational specialist, IT professionals, and outside internal control consultants to speed up the reporting process.[7]

**E.    Additional Improvements to Internal Controls over Financial Reporting**

The Company announced that it had completed the necessary improvements to its internal controls and that its internal control consultants conducted extensive internal controls testing in the following areas: equity grants and stock administration, financial reporting (including impairment testing, period end reconciliation, and financial reporting), IT general and application controls (security and access, capturing and processing information, end user computing, data backup and restoration), and each internal control tested effective.[8]

**F.    Better Alignment of Management and Shareholder Interests**

L&L announced that several members of its management and Board of Directors would increase their ownership of L&L shares.

1.    Chairman and Chief Executive Officer ("CEO") Dickson Lee ("D. Lee") took possession of 750,447 shares of company stock previously pledged as collateral for a personal loan;

2.    Clayton Fong, Vice President of U.S. Operations, agreed to take company shares in lieu of cash salary; and

3.    Several Board members agreed to take a substantial portion of their director fees in the form of equity rather than cash.  L&L directors' cash fees included

---

[7]    L&L Energy, Inc., Annual Report (Form 10-K) at 119 (July 31, 2012).

[8]    L&L Energy, Inc., Quarterly Report (Form10-Q) at 38 (Sept. 10, 2012).

$80,000 annually per director, where directors could substitute equity for any percentage of their cash fee. Two directors elected to receive their entire board fee in equity.[9]

### G.      Termination of CEO

L&L announced that "[o]n March 27, 2014, the United States Department of Justice unsealed an indictment against [D.] Lee," and they also announced that on April 1, 2014, D. Lee notified the Board of his resignation as Chairman and CEO, effective immediately.[10]

## II.    ADDITIONAL    CORPORATE    GOVERNANCE    REFORMS    TO    BE IMPLEMENTED

In addition to the above reforms, as a condition of the settlement of the Derivative Actions, the Company shall implement the following proposed reforms. Unless otherwise stated, the reforms shall be implemented within six months of the final approval of the settlement of the Derivative Actions, and shall be maintained for at least seven years.

### A.      Executive Personnel Changes

1.    Distance from Former CEO:  The Board shall affirmatively distance itself, and take steps to distance the Company, from defendant D. Lee.  The Board shall commit to not rehire defendant D. Lee as a Board member, executive, advisor, or any other position with L&L.

2.    Retention of New CEO:  The Board shall utilize the assistance of an independent firm in locating a suitable replacement CEO.  The Board shall consider at least three candidates for the position and shall solicit shareholder input on potential selections.  The Board will appoint a new CEO as promptly as practicable, but at least within one year of this agreement.  The CEO must have prior experience dealing with Chinese companies and, ideally, would also have experience dealing

---

[9]      Press Release, L&L Energy, Inc., L&L Energy Announces Increases in Ownership by Management and Board of Directors (Sept. 27, 2013).

[10]      L&L Energy, Inc., Report of Unscheduled Material Events or Corporate Changes (Form 8-K), item 5.02 (Apr. 8, 2014).

with Chinese coal mining companies. As set forth below in Section B.3, the new CEO may not act as Chairman of the Board.

3. Retention of New Chief Financial Officer ("CFO"): the Board shall make efforts to attract and retain a new CFO. The Board shall consider as many candidates as practicable, and ideally at least three candidates. The Board shall also solicit shareholder input on potential selections. If practicable, the Board will appoint a new CFO within one and a half years of final approval of the settlement. The CFO must have prior experience dealing with Chinese companies and, ideally, would also have experience dealing with Chinese coal mining companies.

4. Duties of the CFO: The CFO shall be expected to regularly travel to China to observe the major assets owned and operated by the Company. At least twice per year the CFO will travel to China to visit such assets. In particular, the CFO should be sure to visit (i) particularly valuable or productive assets, (ii) new acquisitions, and ( iii) assets that have recently been upgraded or improved.

5. Audit Committee Involvement: The CFO shall report to the Audit Committee no fewer than six times per year.

**B.    Board Changes**

1. Addition of New Directors: The Board shall make efforts to return the Board to a size of at least seven directors. The Board shall also seek shareholder input regarding potential additions. The new additions must include at least one (and ideally two) directors that would qualify as an "audit committee financial expert" as per the rules of the SEC and each of these individuals shall serve on the Audit Committee.

2. Selection of New Chairman of the Board: The Board shall select one of the newly appointed Board members to serve as the Chairman of the Board.

3.    <u>Separation of Chairman and CEO</u>: The Company's by-laws shall be permanently amended to provide that the position of Chairman of the Board may not be held simultaneously by the same person as the CEO and that the Chairman of the Board shall be an independent director.  Thus, Chairman of the Board shall be synonymous with Lead Independent Director, as defined below.

4.    <u>Establishment of Lead Independent Director Position</u>: The independent members of the Board shall annually elect by secret ballot an independent director to act in a lead capacity to coordinate with the other independent directors, as described below.  The Lead Independent Director shall coordinate and moderate executive sessions of the Board's independent directors and act as principal liaison between the independent directors and the CEO on topics or issues as requested by the independent directors, or any other topic selected by the Lead Independent Director.

5.    <u>Duties of the Lead Independent Director</u>:  In addition to the duties of all Board members (which shall not be limited or diminished by the Lead Independent Director's role), the Lead Independent Director shall be responsible for the following functions:

    (a)    Timing and agendas for Board and committee meetings;

    (b)    Determining the nature, quantity, and timing of information provided to the independent directors by the Company's management, including information specifically requested by the Lead Independent Director;

    (c)    Retention of such counsel or consultants who report directly to the Board, or to the Lead Independent Director, as necessary;

    (d)    Implementation of corporate governance policies and procedures, including assisting the chairpersons of the various Board committees as requested by those chairpersons;

  (e)  Receive reports from the Nominating and Corporate Governance Committee regarding recommended revisions to L&L's corporate governance policies;

  (f)  Evaluate, along with the members of the Compensation Committee and the full Board, the CEO's performance and meet with the CEO to discuss the Board's evaluation; and

  (g)  Recommend members for various Board committees, as well as selection of the committee Chairs.

6. <u>Greater Director Involvement</u>:  The Bylaws should be amended to mandate that whenever possible, the agenda and all materials for Board meetings be disseminated at least seven days in advance of each meeting and shall be sent to the directors and all anticipated attendees.

7. <u>Director Term Limits:</u> No person shall serve as a member of the Board for more than ten years, unless their continuing service is approved by shareholder vote.

8. <u>Insider Trading Policy</u>:  The Company shall amend its Code of Conduct to include a formal insider trading policy, which shall be developed by the Audit Committee.

9. <u>Director Independence Standard Improvements:</u> The Company shall maintain at least NASDAQ levels of independence for its Board members.  Once the Board has retained a lead director, the nominating and corporate governance committee will evaluate the director independence standards in place and attempt to revise and strengthen the Company's independence standards consistent with the best interests of the Company and best practices of its peers.

10. <u>Mandatory Attendance at Annual Meetings:</u> Absent extraordinary circumstances, each member of the Board shall attend each annual shareholder meeting in person, and during the annual shareholder meeting, shareholders shall have the right to ask questions orally or in writing, and to receive answers and discussion

where appropriate from the CEO and members of the Board. Such discussion shall take place regardless of whether those questions have been submitted in advance.

**C.  Shareholder Advisory Vote on Executive Compensation**

1.  Institution of Advisory Vote: L&L shall facilitate an annual shareholder "Say on Pay" vote pursuant to section 14A(a)(1) of the of the Securities Exchange Act of 1934 ("Exchange Act").

2.  Abstention of Officers and Directors: Officers and directors of the Company shall abstain from the "Say on Pay" voting.

3.  Board Response to Vote: The Company, either through the Nominations and Corporate Governance Committee or the full Board, shall publish the appropriate formal response to the non-binding shareholder vote in any year in which more than 40% of voting shares decline to approve L&L's executive compensation. The response shall state in detail (i) the primary factors in the Board's compensation decisions, including any data or other information material to the Board's decision; and (ii) any measures to be taken by the Board to address non-approving shareholders concerns or the Board's rationale for taking no action.

**D.  Independent Auditor Improvements**

1.  Board Review: At least twice per year the entire Board shall meet and discuss the performance of the independent auditor. The Board shall discuss any potential ways to improve the auditor's performance and to improve the communication between the Company, the Board, and the independent auditor.

2.  Auditor Rotation: Every two years the Board shall consider whether to rotate the Company's auditor.

**E.** **Independent Corporate Governance Consultant**

1. <u>Independent Review of Procedures:</u>  The Board shall annually consider and vote on whether it should engage an independent corporate governance consultant to perform an independent analysis of material corporate governance weaknesses. This consultant will report directly to the Board, though the consultant shall have access to materials or personnel from any part of the Company in order to assist them.  The consultant shall review the Company's Corporate Governance Guidelines document to evaluate the Company's existing corporate governance measures.

2. <u>Board Analysis of Report:</u> Should the Board elect to hire a corporate governance consultant, the consultant shall provide a written report and oral presentation to the entire Board at the next meeting following completion of the analysis.  After reviewing the report, the Board shall vote on which recommendations to adopt.

**F.** **Internal Audit**

1. <u>Comprehensive Review:</u> At least once every two years, the Company shall conduct a comprehensive review of policies, practices, and procedures regarding the Company's internal audit function, and shall make a report and recommendation to the Audit Committee concerning these policies, practices, and procedures, along with recommendations for improvements. After review of the report, the Audit Committee shall vote on which recommendations to adopt. For each vote against immediate adoption of a recommendation, the Audit Committee minutes shall reflect each director's reason for his or her vote.

2. <u>CFO and Audit Committee Interaction:</u>  The head of the Company's internal audit function shall meet at least twice annually with the CFO and Audit Committee to discuss significant developments, areas of risk, and ways for the Company to better monitor its risks and to better protect itself.

**G.    Audit Committee and Review of Financial Statements and Reports**

1.    Audit Committee Composition: The Audit Committee shall consist of at least three members who meet the independent requirements under Rule 10A-3(b)(1) of the Exchange Act as well as the independence requirements set forth below. At least two members of the Audit Committee shall have a financial background that would qualify them as financial experts under section 407 of the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7265, *et seq.* ("Sarbanes-Oxley"). The Chairman of the Audit Committee shall be elected by the independent directors of the Board.

2.    Board Meeting Requirements: The Audit Committee shall meet at least four times a year, with authority to convene additional meetings as circumstances require. All Audit Committee members are expected to attend each meeting, in person or via videoconference or teleconference. Meeting agendas will be prepared and provided in advance to members, along with appropriate briefing materials. Minutes will be prepared.

3.    Audit Committee Review:  The Audit Committee shall review and discuss with the appropriate members of management, the independent auditors, and internal auditors the following key concepts:

(a)    The scope and results of the annual audit, including a report prepared in accordance with Item 407 of Regulation S-K to be included in the Company's proxy statement. The Audit Committee shall also report on other activities of the Audit Committee and recommend additions or variations in auditing, accounting, and control functions as it may deem desirable; and

(b)     Management's assessment of internal control over financial reporting and the related report and attestation on internal control over financial reporting.

4.   <u>Review of Audit Plan</u>:  The Audit Committee shall annually review the overall plan of the audit as proposed by the independent auditors including the scope of the examination to be performed, the assistance to be provided by the internal auditors, and any developments in accounting principles and auditing standards that may affect either the financial statements or the audit.

5.   <u>Confirmation with Independent Auditors</u>:  The Audit Committee shall meet with the Company's independent auditors prior to the issuance of any SEC filings on Form 10-K.

6.   <u>Investigation with Independent Auditors</u>:  Prior to the filing of any audit report, the Audit Committee must timely request a report from independent auditors concerning other material written communications between the independent auditors and Company management, such as any management letters or schedule of unadjusted differences.

7.   <u>Additional Duties</u>: The Audit Committee's duties shall include assessing and appropriately responding to, if necessary, the following:

(a)     Management's attitude toward internal controls, the process for establishing and monitoring internal controls, and any special auditing steps adopted in light of material control deficiencies;

(b)     The scope and results of the internal audit program; and

(c)     The internal auditing compliance with appropriate audit standards.

8.   <u>Audit Committee Authority</u>:  The Audit Committee shall conduct or authorize investigations into any activities it deems necessary and appropriate.

9.  <u>Better Understanding of Audit Committee Role:</u> The Audit Committee shall replace Section VII of the Audit Committee's charter under the title "Understanding as to the Committee's Role" with the following paragraphs:

> While the Committee has the functions set forth in this Charter, it is not the duty of the Committee to plan or conduct audits. The responsibility to plan and conduct audits is that of the independent auditors. While the Company's management is principally responsible for the Company's accounting policies and the preparation of the financial statements, the Audit Committee is responsible for overseeing and, with the assistance of the Company's internal audit department and the Company's independent auditors, ensuring that the Company's financial statements are prepared in accordance with generally accepted accounting principles ("GAAP") and comply with all applicable legal and regulatory requirements. The Audit Committee is required to review, together with the Company's independent auditors, any material or unusual accounting issues that require the exercise of a high degree of judgment regarding the appropriate treatment under GAAP, and to approve the Company's treatment of these issues. The independent auditors are responsible for auditing and attesting to the Company's financial statements and understanding the Company's system of internal control over financial reporting sufficient to plan and to determine the nature, timing, and extent of audit procedures to be performed.

> In its oversight capacity, the Audit Committee has the duty to ensure that the Company implements and maintains internal

controls over accounting and financial reporting and reporting systems and procedures sufficient to discover instances of fraud and to ensure the integrity, accuracy, completeness, and timeliness of the Company's financial statements and related public filings and disclosures.

**H.    Creation of Foreign Operations Oversight Committee and Officer**

1.    Creation of Committee: The Board shall annually consider and vote on whether it should it create a Foreign Operations Oversight Committee tasked with oversight of legal and regulatory compliance in L&L's operations outside the United States.

2.    Creation of Officer Position: The Board shall annually consider and vote on whether it would be in the Company's best interests to appoint a Chines Operations Officer who shall manage L&L's foreign operations in China, including monitoring and evaluating compliance with the Company's policies and procedures.    Such officer would report to the Audit Committee and/or any Foreign Operations Oversight Committee as appropriate.

**I.    Director Training, Continuing Education, Evaluation and Reporting, and Annual Self-Assessment**

1.    Director Training: Each director shall annually attend at least three training sessions provided by a nationally recognized corporate director education provider, or other corporate governance professionals, including attorneys. The Board shall determine a list of topics each year that are most critical for the Board (as a whole, or individually for each director) to learn more about.   Such training shall include compliance with Generally Accepted Accounting Principles ("GAAP"), SOX and other federal and state reporting requirements for publicly-traded corporations, and the differences between United States and Chinese filing requirements, as well as the Company's policies and Ethics Code.

2. <u>China-Specific Training</u>: Each director shall annually attend at least one training session or director education program that is tailored toward conducting business in China.

**J.    Legal and Ethics Compliance program (including Whistleblower Program).**

1. <u>Adoption of Legal and Ethics Compliance Program:</u> The Board of Directors shall evaluate whether to implement a Legal and Ethics Compliance Program designed to both prevent misconduct and detect potential violations of applicable law, regulation, and Company policies. The Board's evaluation should be guided by the U.S. Federal Sentencing Guidelines, found in section 8B2.1, which are considered the gold standard.

2. <u>Adherence to Legal Standards:</u> The program will be structured to ensure that it fulfills the Board's duties of care and loyalty and its role in risk oversight as required under the standards articulated in the *In re Caremark International Inc. Derivative Litigation,* 698 A.2d 959 (Del. Ch. 1996), and *Stone v. Ritter,* 911 A.2d 362 (Del. 2006) decisions and applicable SEC regulations.

3. <u>Adoption of Whistleblower Program:</u> The board shall annually consider whether to implement a formal whistleblower program, considering such factors as the size of the Company, and the reporting mechanisms already available for employees to report misconduct.

**K.    Clawback Policy**

1. <u>Adoption of Program:</u> The Board of Directors shall review clawback policies of peer companies, and using those as a guide, implement an appropriate program for the Company designed to return unjustified compensation to the Company in the case of serious accounting misconduct or other fraud.

# EXHBIIT B

# EXHIBIT B

IN THE FIRST JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

IN AND FOR CARSON CITY

| | |
|---|---|
| LAREW P. STOUFFER, Derivatively on Behalf of L & L ENERGY, INC., | ) ) Case No. 11 0C 00352 1B |
| Plaintiff, | ) ) Dept. No. I |
| v. | ) ) |
| DICKSON V. LEE, IAN ROBINSON, ROBERT W. LEE, SHIRLEY KIANG, DENNIS BRACY, SYD S. PENG, EDWARD L. DOWD, JR., ANDREW M. LEITCH, ROBERT A. OKUN, NORMAN MINETA, JOSEPH J. BORICH, JUNG MEI WANG, and DAVID LIN, | ) ) **[PROPOSED] ORDER PRELIMINARILY** ) **APPROVING SETTLEMENT AND** ) **PROVIDING FOR NOTICE** ) ) ) ) |
| Defendants, | ) ) |
| -and- | ) ) |
| L & L ENERGY, INC., a Nevada corporation, | ) ) ) |
| Nominal Defendant. | ) ) |

1     WHEREAS, a shareholder derivative action is pending before the Court[1] under the

2  caption *Stouffer v. Lee*, Case No. 11 0C 00352 1B;

3     WHEREAS, related shareholder derivative actions are pending under the captions

4  *Bessent v. Lee*, Case No. 13-2-36158-2 KNT (Wash. Super. Ct. filed Oct. 23, 2013); *Finklestein*

5  *v. Lee*, Case No. 2:13-cv-02197RSL (W.D. Wash. filed Dec. 9, 2013); and *Giesbrecht v. Lee*,

6  Case No. 3:13-CV-00697-HDM-WGC (D. Nev. filed Dec. 20, 2013).

7     WHEREAS, the Plaintiff Stouffer has made an application for an order: (i) preliminarily

8  approving the proposed Settlement of the Actions in accordance with the Stipulation of

9  Settlement (the "Stipulation"), which, together with the Exhibits annexed thereto, sets forth the

10 terms and conditions for the proposed settlement and dismissal of the Actions with prejudice (the

11 "Settlement"); (ii) approving the form and manner of the notice described in the Stipulation; and

12 (iii) setting a date for the Settlement Hearing before the Court to determine whether the proposed

13 Settlement should be finally approved;

14    WHEREAS, the Court having considered: (i) the Plaintiff's Unopposed Motion for

15 Preliminary Approval of Settlement together with the accompanying Memorandum of Law; (ii)

16 the Stipulation, as well as the Exhibits attached thereto; and (iii) the arguments by counsel for the

17 Parties in favor of preliminary approval of the Settlement; and

18    WHEREAS, the Court finds, upon a preliminary evaluation, that the proposed Settlement

19 falls within the range of possible approval criteria, as it provides a beneficial result for L&L and

20 appears to be the product of good-faith, informed, and non-collusive negotiations between

21 experienced and able counsel for the Parties.

22    NOW, THEREFORE, UPON GOOD CAUSE SHOWN, IT IS HEREBY ORDERED as

23 follows:

24

25 _____

26 [1] Except as otherwise expressly provided below or as the context otherwise requires, all
   capitalized terms contained herein shall have the same meanings and/or definitions as set forth in

27 the Stipulation of Settlement dated September ___, 2014 (the "Stipulation").

28
                                          - 1 -

   Exhibit B

00045

1     1.    The Court does hereby preliminarily approve the Settlement as set forth in the

2 Stipulation, subject to further consideration at the Settlement Hearing described below.

3     2.    Pending the Court's determination as to final approval of the Settlement,

4 Plaintiffs, L&L, and all Current L&L Shareholders are barred and enjoined from commencing,

5 prosecuting, instigating, or in any way participating in the commencement or prosecution of any

6 action asserting any Released Claim against any of the Released Persons.

7     3.    The Settlement Hearing shall be held before this Court, on _____,

8 2014, at __:__ .m., in the First Judicial District Court of Nevada in and for Carson City, located

9 at 885 East Musser Street, Department I, Carson City, Nevada 89701, to determine: (i) whether

10 the Settlement of the Actions on the terms and conditions provided for in the Stipulation is fair,

11 reasonable, and adequate to Current L&L Shareholders and to L&L and should be approved by

12 the Court; (ii) whether the *Stouffer* Action should be dismissed with prejudice; and (iii) whether

13 the Court should approve the Fee and Expense Amount and the Incentive Amount.

14     4.    The Court approves, as to form and content, the Notice of Pendency and Proposed

15 Settlement of Shareholder Derivative Actions ("Notice") and the Summary Notice of Pendency

16 and Proposed Settlement of Shareholder Derivative Actions ("Summary Notice") and finds that

17 the provisions of the Notice and Summary Notice, substantially in the manner and form set forth

18 in Exhibits C and D, respectively, to the Stipulation, meets the requirements of Nevada law and

19 due process, is the best notice practicable under the circumstances, and shall constitute due and

20 sufficient notice to all Persons entitled thereto. Non-material changes to the form of Notice and

21 Summary Notice may be made without further approval of the Court.

22     5.    Not later than ten calendar days after the entry of this Order, L&L shall issue a

23 press release announcing the Settlement, including instructions to Current L&L Shareholders on

24 how to access the Notice and Stipulation, and referring Current L&L Shareholders to the

25 websites of Robbins Arroyo LLP, Levi & Korsinsky LLP, Gainey McKenna & Egleston,

26 Harwood Feffer LLP, and L&L for more information.

27

28

-2-

6.    Not later than ten calendar days after the entry of this Order, Robbins Arroyo LLP, Levi & Korsinsky LLP, Gainey McKenna & Egleston, and Harwood Feffer LLP shall post copies of the Notice and the Stipulation on their firms' websites.

7.    Not later than ten calendar days after the entry of the Preliminary Approval Order, L&L shall post copies of the Notice and this Stipulation on its website.

8.    Not later than ten calendar days after the entry of this Order, L&L shall cause the Summary Notice to be published once in the *Investor's Business Daily*.

9.    L&L's insurer shall be responsible for the reasonable and necessary costs of publishing the Summary Notice. If the Court requires additional notice, the reasonable and necessary costs of such additional notice will be borne by L&L through its insurer.

10.    Not later than seven calendar days prior to the Settlement Hearing, Defendants' counsel and Plaintiffs' Counsel shall serve on counsel in the Actions and file with the Court an appropriate affidavit or declaration with respect to posting and publishing the Notice and Summary Notice.

11.    All papers in support of the Settlement, the Fee and Expense Amount, and the Incentive Amount shall be filed with the Court and served at least twenty-one calendar days before the date of the Settlement Hearing

12.    All papers in response to any Current L&L Shareholder objections shall be filed with the Court and served at least seven calendar days before the date of the Settlement Hearing.

13.    Any Current L&L Shareholder who wishes to object to the Settlement may appear and show cause, if he, she, or it has any reasons why the Settlement should not be finally approved as fair, reasonable, and adequate, or why the Judgment should not be entered thereon, or why the Fee and Expense Amount or Incentive Amount should not be finally approved; provided, however, that no Current L&L Shareholder shall be heard or entitled to contest the approval of the terms and conditions of the Settlement or, if approved, the Judgment to be entered thereon approving the same, or the Fee and Expense Amount or Incentive Amount, unless that Current L&L Shareholder has filed with the Clerk of the Court and delivered by hand or sent by first class mail to Plaintiffs' Counsel and Defendants' Counsel, a written objection to

- 3 -

Exhibit B

00047

the Settlement setting forth: (a) such Person's or entity's name, legal address, and telephone number, along with a representation as to whether such Person or entity intends to appear to be heard at the Settlement Hearing; (b) a statement of the reason(s) for the objection; (c) proof of ownership of L&L common stock as of _____, 2014, the date of execution of the Stipulation through the date of the Settlement Hearing, including the number of shares of L&L common stock and the date of purchase; (d) any documentation in support of such objection; and (e) if the Current L&L Shareholder has indicated that he, she, or it intends to appear and requests to be heard at the Settlement Hearing, the identities of any witnesses the shareholder intends to call at the Settlement Hearing and a statement as to the subjects of their testimony. Any such objections must be filed with the Court and received by the following counsel at the addresses below no later than *fourteen calendar days prior to the Settlement Hearing*:

> The Court:
> Clerk of the Court
> FIRST JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA
> IN AND FOR CARSON CITY
> 885 East Musser Street, Suite 3031
> Carson City, NV 89701
>
> Plaintiffs' Counsel:
>
> ROBBINS ARROYO LLP
> Kevin A. Seely, Esq.
> 600 B Street, Suite 1900
> San Diego, CA 92101
>
> Counsel for Defendants:
>
> ARMSTRONG TEASDALE, LLP
> RICHARD G. CAMPBELL
> 50 West Liberty, Suite 950
> Reno, NV 89501

14.    Any Current L&L Shareholder who does not make his, her, or its objection in the manner provided herein shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the Settlement or the Fee and Expense Amount or Incentive Amount as incorporated in the Stipulation, unless otherwise ordered by the Court, but shall otherwise be bound by the Judgment to be entered and the releases to be given.

- 4 -

Exhibit B

00048

15. L&L and all Current L&L Shareholders (and his, her, or its successors, predecessors, and assigns) shall be bound by all orders, determinations, and judgments in the *Stouffer* Action concerning the Settlement.

16. If the Settlement does not become Final for any reason, the Settlement and the settlement documents shall be null and void and of no force and effect. In such event, the Settling Parties shall return to their respective litigation positions in the *Stouffer* Action as of the time immediately prior to the date of the execution of the Stipulation, as though it were never executed or agreed to, and the Stipulation shall not be deemed to prejudice in any way the positions of the Settling Parties with respect to the *Stouffer* Action, or to constitute an admission of fact by any Settling Party, shall not entitle any Settling Party to recover any costs or expenses incurred in connection with the implementation of the Stipulation or the Settlement, and neither the existence of the Stipulation nor its contents shall be admissible in evidence or be referred to for any purposes in the *Stouffer* Action, or in any litigation or judicial proceeding, other than to enforce the terms therein.

17. All proceedings in the *Stouffer* Action, except for those proceedings related to the Settlement, shall be stayed until the resolution of all Settlement-related proceedings.

18. The Court may adjourn the Settlement Hearing or modify any other dates set forth herein without further notice to Current L&L Shareholders, and retains jurisdiction to consider all further applications arising out of or connected to the Settlement. The Court may approve the Settlement, with such modifications as may be agreed to by the Settling Parties, if appropriate, without further notice to the Current L&L Shareholders.

\* \* \*

IT IS SO ORDERED.

DATED: _____       _____
                                    THE HONORABLE JAMES T. RUSSELL
                                    DISTRICT COURT JUDGE

956140

- 5 -

Exhibit B

00049

00050

1

2

3

4

5

6

7

8                IN THE FIRST JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

9                             IN AND FOR CARSON CITY

10

LAREW P. STOUFFER, Derivatively on            )    Case No. 11 0C 00352 1B
11 Behalf of L & L ENERGY, INC.,                 )
                                                 )
12                      Plaintiff,               )    Dept. No. I
                 v.                              )
13                                               )
DICKSON V. LEE, IAN ROBINSON,                   )    **NOTICE OF PENDENCY AND**
14 ROBERT W. LEE, SHIRLEY KIANG,                 )    **PROPOSED SETTLEMENT OF**
DENNIS BRACY, SYD S. PENG,                      )    **SHAREHOLDER DERIVATIVE**
15 EDWARD L. DOWD, JR., ANDREW M.                )    **ACTIONS**
LEITCH, ROBERT A. OKUN, NORMAN                  )
16 MINETA, JOSEPH J. BORICH, JUNG MEI            )
WANG, and DAVID LIN,                            )
17                                               )
                       Defendants,              )
18              -and-                            )
                                                 )
19 L & L ENERGY, INC., a Nevada                  )
corporation,                                    )
20                                               )
                 Nominal Defendant.             )
21 _____          )

22

23

24

25

26

27

28

# EXHIBIT C

# EXHIBIT C

TO:  ALL HOLDERS OF L&L ENERGY, INC. ("L&L" OR "THE COMPANY") COMMON STOCK AS OF SEPTEMBER 19, 2014 ("CURRENT L&L SHAREHOLDERS").

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.  YOUR RIGHTS MAY BE AFFECTED.  THIS NOTICE RELATES TO A PROPOSED SETTLEMENT AND DISMISSAL OF SHAREHOLDER DERIVATIVE LITIGATION AND CONTAINS IMPORTANT INFORMATION REGARDING YOUR RIGHTS. YOUR RIGHTS MAY BE AFFECTED BY LEGAL PROCEEDINGS IN THE ACTIONS.

IF THE COURT APPROVES THE SETTLEMENT AND DISMISSAL OF THE ACTIONS, YOU WILL BE FOREVER BARRED FROM CONTESTING THE APPROVAL OF THE PROPOSED SETTLEMENT AND FROM PURSUING THE SETTLED CLAIMS. THE ACTIONS ARE NOT "CLASS ACTIONS." THUS, THERE IS NO COMMON FUND UPON WHICH YOU CAN MAKE A CLAIM FOR A MONETARY PAYMENT.

THE COURT HAS MADE NO FINDINGS OR DETERMINATIONS RESPECTING THE MERITS OF THE ACTIONS.  THE RECITATION OF THE BACKGROUND AND CIRCUMSTANCES OF THE SETTLEMENT CONTAINED HEREIN DO NOT CONSTITUTE THE FINDINGS OF THE COURT.  IT IS BASED ON REPRESENTATIONS MADE TO THE COURT BY COUNSEL FOR THE PARTIES.

This Notice is given pursuant to the Preliminary Approval Order of the First Judicial District Court of the State of Nevada in and for Carson City (the "Court").  The purpose of the Notice is to advise you that the parties in the lawsuits captioned *Stouffer v. Lee*, Case No. 11 0C 00352 1B (Nev. Jud. Dist. Ct. filed Nov. 4, 2011); *Bessent v. Lee*, Case No. 13-2-36158-2 KNT (Wash. Super. Ct. filed Oct. 23, 2013); *Finklestein v. Lee*, Case No. 2:13-cv-02197RSL (W.D. Wash. filed Dec. 9, 2013); and *Giesbrecht v. Lee*, Case No. 3:13-CV-00697-HDM-WGC (D. Nev. filed Dec. 20, 2013) (collectively the "Actions"), have agreed to settle the Actions on the terms and conditions set forth in the Stipulation of Settlement dated September 19, 2014 (the "Stipulation").  A copy of the Stipulation may be inspected at the Clerk of the Court's Office for the First Judicial District Court for the State of Nevada in and for Carson City, 885 East Musser Street, Suite 3031, Carson City, Nevada 89701.  The Stipulation also is available for viewing and/or downloading at the websites of Robbins Arroyo LLP at www.robbinsarroyo.com/notices, Levi & Korsinsky LLP at www.zlk.com, Gainey McKenna & Egelston at www.gme-law.com, Harwood Feffer LLP at www.hfesq.com, and L&L at www.llenergyinc.com.  All capitalized terms used herein, unless otherwise defined, shall have the same meanings as set forth in the Stipulation.

- 1 -

00052

As explained below, the Court will hold a Settlement Hearing on _____, 2014 at __:__ _.m., before the Honorable James T. Russell, District Court Judge of the First Judicial District Court of the State of Nevada, located at 885 East Musser Street, Department I, Carson City, Nevada 89701, to determine whether to approve the Settlement. You have the right to object to the Settlement in the manner provided herein. If you fail to object in the manner provided herein at least fourteen calendar days prior to the Settlement Hearing, you will be deemed to have waived your objections and will be bound by the Judgment to be entered and the releases as provided in the Stipulation, unless otherwise ordered by the Court.

This Notice is not an expression of any opinion by the Court with respect to the merits of the allegations or claims made in the Actions, the merits of the defenses asserted, or the fairness or adequacy of the proposed Settlement. This Notice is merely to advise you of the pendency and terms of the proposed Settlement, and your rights thereto.

## I.     SUMMARY OF THE ACTIONS AND SETTLEMENT NEGOTIATIONS

The Actions were filed by Plaintiffs solely on behalf of and for the benefit of L&L and Current L&L Shareholders and against the Defendants. Plaintiffs generally allege, among other things, that certain of the Company's current and former officers and directors breached their fiduciary duties to the Company in connection with Company's disclosures regarding aspects of the Company's ownership of assets and its financial condition. Specifically, Plaintiffs alleged that the financial statements: (i) inflated financial information; (ii) improperly classified assets; (iii) improperly listed ownership of certain assets and subsidiaries; and (iv) were prepared with inadequate internal financial controls.

After extensively litigating their respective claims and/or defenses, counsel for the Settling Parties engaged in arm's-length negotiations concerning the terms and conditions of a potential resolution of the Actions, including contested mediations before a neutral mediator, the Honorable Layn R. Phillips (Ret.). Following the mediation and negotiations, counsel for the Settling Parties reached an agreement providing for the settlement of the Actions as documented by the Stipulation.

00053

## II.    THE SETTLEMENT TERMS

The terms and conditions of the proposed Settlement are set forth in the Stipulation. L&L shall, within thirty calendar days after entry of the Judgment, formally express and/or implement and maintain in substance the corporate governance reforms, additions, amendments, or formalizations identified in Exhibit A to the Stipulation ("the Reforms"), for a period of no less than seven years.   Defendants acknowledge and agree that the corporate governance reforms, additions, amendments, or formalizations identified in Exhibit A attached hereto are extensive and confer substantial benefits upon L&L and its shareholders.   In Exhibit A to the Stipulation, Defendants have acknowledged the value of the Reforms and their connection to the Actions.

The Reforms set forth specific policies and procedures that are designed to strengthen, among other things, the Company's internal controls concerning its public disclosures.   In particular, as a result of the Actions, the Company will expand the design and assessment test work over the monitoring function of entity level controls, and enhance documentation of such tests.  The Reforms also target general governance issues to address core corporate issues, such as aligning management and shareholder interests, enhanced director training protocols, personnel changes, and an enhanced legal and ethics compliance program.

Defendants have agreed to seek reimbursement from L&L's insurers for any covered costs and expenses required by the Settlement that they incur.

In recognition of the substantial benefits conferred upon L&L as a direct result of the prosecution and Settlement of the Actions, and subject to Court approval, L&L's insurer, on behalf of L&L, shall pay Plaintiffs' Counsel attorneys' fees and expenses in the agreed-to amount of $795,000 (the "Fee and Expense Amount").   The Fee and Expense Amount was negotiated with the help of the Mediator after the Settling Parties had substantially negotiated the material terms of the Settlement and was the result of arm's-length negotiations between the Settling Parties.

00054

This Notice provides a summary of some, but not all, of the Reforms that L&L has enacted or agreed to enact as consideration for the Settlement. For a list of all of the Reforms, please see Exhibit A attached to the Stipulation.

**III.    RELEASES**

Upon the Effective Date, Plaintiffs, L&L, and Current L&L Shareholders shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled, released, discharged, extinguished, and dismissed with prejudice the Released Claims against the Released Persons; provided, however, that such release shall not affect any claims to enforce the terms of the Stipulation or the Settlement.

Also upon the Effective Date, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled, released, discharged, extinguished, and dismissed with prejudice all claims (including Unknown Claims), arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Actions or the Released Claims against Plaintiffs and Plaintiffs' Counsel; provided, however, that such release shall not affect any claims to enforce the terms of the Stipulation or the Settlement.

**IV.    PLAINTIFFS' COUNSEL'S INVESTIGATION AND RESEARCH, PLAINTIFFS' CLAIMS, AND THE BENEFITS OF SETTLEMENT**

Plaintiffs' Counsel conducted an extensive investigation relating to the claims and the underlying events alleged in the Actions including, but not limited to: (1) inspecting, analyzing, and reviewing L&L's public filings with the U.S. Securities and Exchange Commission ("SEC"), press releases, announcements, transcripts of investor conference calls, securities analysts' reports, advisories, media reports, and news articles; (2) researching the applicable law with respect to the claims asserted in the Actions and the potential defenses thereto; (3) conducting comprehensive damages analyses; (4) drafting and filing the various complaints in the Actions; (5) reviewing and analyzing the relevant pleadings in the securities class actions; (6) researching corporate governance issues and best practices, in particular issues relating to companies listed on U.S. stock exchanges whose primary operations are located in China, and comparing such to

-4-

L&L's governance structures and policies; (7) preparing mediation briefs; and (8) participating in extensive settlement discussions with Defendants' counsel, including participation in a day-long, in-person formal mediation and many follow-up settlement discussions. As a result of these efforts, Plaintiffs believe the Actions have substantial merit.

Nonetheless, Plaintiffs and Plaintiffs' Counsel also recognize and acknowledge the significant risk, expense, and length of continued proceedings necessary to prosecute the Actions against the Individual Defendants through trial and through possible appeals. Plaintiffs' Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex cases such as the Actions, as well as the difficulties and delays inherent in such litigation. This matter poses additional risks associated with being able to serve defendants and collect any judgment against the Individual Defendants, especially those who do not reside in the United States, and with the Individual Defendants' limited insurance, which was depleted by the ongoing cost of defending the Actions and the Washington and New York Securities Class Actions. Plaintiffs' Counsel also are mindful of the inherent problems of proof and possible defenses to the claims alleged in such Actions. Plaintiffs' Counsel have conducted a thorough review and analysis of the relevant facts, allegations, defenses, and controlling legal principles, and believe that the Settlement set forth in the Stipulation is fair, reasonable, and adequate, and confers substantial benefits upon L&L and its shareholders. Based upon Plaintiffs' Counsel's evaluation, Plaintiffs have determined that the Settlement is in the best interests of L&L and its shareholders and have agreed to settle the Actions upon the terms and subject to the conditions set forth in the Stipulation.

## V. DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants have denied and continue to deny they have committed, threatened, or attempted to commit any violations of law or breached any duty owed to Plaintiffs, L&L, or its shareholders. Nonetheless, Defendants have concluded that further litigation of the Actions would be protracted and expensive, and that it is desirable for the Actions to be fully and finally settled in the matter and upon the terms and conditions set forth in the Stipulation. Defendants have also taken into account the uncertainty and risks inherent in any litigation, especially in

- 5 -

00056

complex cases like the Actions. Defendants have, therefore, determined that it is desirable and beneficial that the Actions be settled in the manner and upon the terms and conditions set forth in the Stipulation. Further, Defendants acknowledge that the Settlement is fair, reasonable, adequate, and in the best interests of L&L and its shareholders.

Neither the Stipulation, nor any of its terms or provisions, nor entry of the Judgment, nor any document or exhibit referred or attached to the Stipulation, nor any action taken to carry out the Stipulation, is, may be construed as, or may be used as evidence of the validity of any of the Released Claims or an admission by or against Defendants of any fault, wrongdoing, or concession of liability whatsoever.

## VI.    THE SETTLEMENT HEARING

On _____, 2014 at __:__ __.m., the Court will hold the Settlement Hearing before the Honorable James T. Russell, District Court Judge of the First Judicial District Court of the State of Nevada, located at 885 East Musser Street, Department I, Carson City, Nevada, 89701. At the Settlement Hearing, the Court will consider: (1) whether the proposed settlement of the claims in the Actions should be approved by the Court as fair, reasonable, and adequate; (2) whether, thereafter, the *Stouffer* Action should be dismissed with prejudice as set forth in the Stipulation; and (3) whether the agreed-upon Fee and Expense Amount for the payment of attorneys' fees and expenses and the Incentive Amount for each of the Plaintiffs should be approved.

## VII.    YOUR RIGHT TO BE HEARD AT THE SETTLEMENT HEARING

Any Current L&L Shareholder may, but is not required to, appear in person at the Settlement Hearing if you have any reasons why the Settlement should not be finally approved as fair, reasonable, and adequate, or why the Judgment should not be entered thereon, or why the Fee and Expense Amount or Incentive Amount should not be finally approved. If you want to be heard at the Settlement Hearing, then you must first comply with the procedures for objecting, which are set forth below. The Court has the right to change the date or time of the Settlement Hearing without further notice. Thus, if you are planning to attend the Settlement Hearing, you should confirm the date and time before going to the Court. CURRENT L&L

- 6 -

00057

SHAREHOLDERS WHO HAVE NO OBJECTION TO THE SETTLEMENT DO NOT NEED TO APPEAR AT THE SETTLEMENT HEARING OR TAKE ANY OTHER ACTION.

## VIII. PROCEDURES FOR OBJECTING TO THE SETTLEMENT

Current L&L Shareholders have the right to object to any aspect of the Settlement. You must object in writing, and you may request to be heard at the Settlement Hearing. If you choose to object, then you must follow these procedures.

### A. You Must Make Detailed Objections in Writing

Any objection must be presented in writing and must contain the following information:

1. Your name, legal address, and telephone number;

2. Proof of being a Current L&L Shareholder as of September 19, 2014, the date of execution of the Stipulation through date of the Settlement Hearing, including the number of shares;

3. The date(s) you purchased your L&L shares;

4. A statement of your position with respect to the matters to be heard at the Settlement Hearing, including a statement of each objection being made;

5. The grounds for each objection or the reasons for your desiring to appear and to be heard;

6. Notice of whether you intend to appear at the Settlement Hearing (attendance is not required if you timely have lodged your objection with the Court); and

7. Copies of any papers you intend to submit to the Court, along with the names of any witness(es) you intend to call to testify at the Settlement Hearing and the subject(s) of their testimony.

The Court may not consider any objection that does not comply with these requirements.

00058

**B.    You Must Timely Deliver Written Objections to the Court, Plaintiffs' Counsel, and Defendants' Counsel**

YOUR WRITTEN OBJECTIONS MUST BE ON FILE WITH THE CLERK OF THE COURT NO LATER THAN FOURTEEN CALENDAR DAYS BEFORE THE SETTLEMENT HEARING.  The Court Clerk's address is:

> Clerk of the Court
> FIRST JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA
> IN AND FOR CARSON CITY
> 885 East Musser Street, Suite 3031
> Carson City, NV 89701

YOU MUST ALSO DELIVER COPIES OF THE MATERIALS TO PLAINTIFFS' COUNSEL AND DEFENDANTS' COUNSEL SO THEY ARE RECEIVED NO LATER THAN FOURTEEN CALENDAR DAYS BEFORE THE SETTLEMENT HEARING.    Counsel's addresses are:

> Plaintiffs' Counsel:
>
> ROBBINS ARROYO LLP
> Kevin A. Seely, Esq.
> 600 B Street, Suite 1900
> San Diego, CA 92101
>
> Counsel for Defendants:
>
> ARMSTRONG TEASDALE, LLP
> RICHARD G. CAMPBELL
> 50 West Liberty, Suite 950
> Reno, NV 89501

Any Current L&L Shareholder who fails to object or otherwise request to be heard in the manner prescribed above will be deemed to have waived the right to object to any aspect of the Settlement or otherwise request to be heard (including the right to appeal) and will be forever barred from raising such objection to the Settlement or request to be heard regarding the Settlement in this or any other action or proceeding, and shall be bound by the Settlement, the Judgment, and the releases given.

## IX.    CONDITIONS FOR SETTLEMENT

The Settlement is conditioned upon the occurrence of certain events described in the Stipulation, which requires, among other things: (i) court approval of the Settlement following

- 8 -

00059

notice to Current L&L Shareholders and the Settlement Hearing; (ii) entry of the Judgment in the *Stouffer* Action; (iii) dismissal of the Related Actions with prejudice; (iv) payment to Plaintiffs' Counsel of the Fee and Expense Amount, including the Incentive Amount, as approved by the Court; and (v) the passing of the date upon which the Judgment becomes final. If, for any reason, any one of the conditions described in the Stipulation is not met and the entry of the Judgment does not occur, the Stipulation might be terminated and, if terminated, will become null and void; and the Parties to the Stipulation will be restored to their respective positions as of the date immediately prior to the execution date of the Stipulation.

## X. HOW TO OBTAIN ADDITIONAL INFORMATION

This Notice summarizes the Stipulation. It is not a complete statement of the events of the Actions or the Stipulation. There is additional information concerning the Settlement available in the Stipulation, which may be inspected during business hours at the office of the Clerk of the Court, at First Judicial District Court of the State of Nevada, located at 885 East Musser Street, Suite 3031, Carson City, Nevada 89701, on L&L's corporate website at www.llenergyinc.com, or on Robbins Arroyo LLP's website at www.robbinsarroyo.com/notices Levi & Korsinsky LLP's website at www.zlk.com, Gainey McKenna & Egelston's website at www.gme-law.com, and Harwood Feffer LLP's website at www.hfesq.com.

PLEASE DO NOT CALL, WRITE, OR OTHERWISE DIRECT QUESTIONS TO THE COURT, THE CLERK'S OFFICE, OR L&L REGARDING THIS NOTICE. For more information concerning the Settlement, you may also call or write to: Robbins Arroyo LLP, c/o Darnell R. Donahue, 600 B Street, Suite 1900, San Diego, California 92101, Telephone: (619) 525-3990.

955561

00060

# EXHIBIT D

# EXHIBIT D

1

2

3

4

5

6

7

8          IN THE FIRST JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

9                         IN AND FOR CARSON CITY

10   LAREW P. STOUFFER, Derivatively on        )   Case No. 11 0C 00352 1B
     Behalf of L & L ENERGY, INC.,              )
11                                              )
                    Plaintiff,                  )   Dept. No. I
12                                              )
                                                )
13         v.                                   )
                                                )   **SUMMARY NOTICE OF PENDENCY**
14   DICKSON V. LEE, IAN ROBINSON,              )   **AND PROPOSED SETTLEMENT OF**
     ROBERT W. LEE, SHIRLEY KIANG,              )   **SHAREHOLDER DERIVATIVE**
     DENNIS BRACY, SYD S. PENG,                 )   **ACTIONS**
15   EDWARD L. DOWD, JR., ANDREW M.             )
     LEITCH, ROBERT A. OKUN, NORMAN             )
16   MINETA, JOSEPH J. BORICH, JUNG MEI         )
     WANG, and DAVID LIN,                       )
17                                              )
                                                )
18                  Defendants,                 )
                                                )
19         -and-                                )
                                                )
20   L & L ENERGY, INC., a Nevada               )
     corporation,                               )
21                                              )
                    Nominal Defendant.          )
22                                              )

23

24

25

26

27

28

00062

**TO: ALL HOLDERS OF L&L ENERGY, INC. ("L&L" OR "THE COMPANY") COMMON STOCK AS OF SEPTEMBER 19, 2014 ("CURRENT L&L SHAREHOLDERS").**

YOU ARE HEREBY NOTIFIED, pursuant to the Preliminary Approval Order of the First Judicial District Court of the State of Nevada in and for Carson City (the "Court"), that a hearing will be held on _____, 2014, at ___ .m., before the Honorable James T. Russell, District Court Judge of the First Judicial District Court of the State of Nevada, located at 885 East Musser Street, Department I, Carson City, Nevada 89701: (1) whether the proposed settlement of the claims in the Actions should be approved by the Court as fair, reasonable, and adequate; (2) whether, thereafter, the Actions should be dismissed with prejudice as set forth in the Stipulation of Settlement; and (3) whether the agreed-upon Fee and Expense Amount for the payment of attorneys' fees and expenses and the Incentive Amount for each of the Plaintiffs should be approved. Except as otherwise expressly provided below or as the context otherwise requires, all capitalized terms contained herein shall have the same meanings and/or definitions as set forth in the Stipulation of Settlement dated September 14, 2014 (the "Stipulation").

If you are a current record holder of L&L common stock as of September 14, 2014, the date of execution of the Stipulation, through the date of the Settlement Hearing, your rights may be affected of the Settlement of the Actions. You may obtain and/or review copies of the Stipulation, the full Notice, and all related documents during regular business hours at the offices of the Clerk of the Court, at First Judicial District Court of the State of Nevada, located at 885 East Musser Street, Suite 3031, Carson City, Nevada 89701, on L&L's corporate website at www.llenergyinc.com, or by contacting Plaintiffs' Counsel at Robbins Arroyo LLP, c/o Darnell R. Donahue, 600 B Street, Suite 1900, San Diego, California 92101, Telephone: (619) 525-3990, or at www.robbinsarroyo.com/notices, Levi & Korsinsky LLP's website at www.zlk.com, Gainey McKenna & Egelston's website at www.gme-law.com, or Harwood Feffer LLP's website at www.hfesq.com. These documents describe the information that must be provided and the necessary steps current record holders of L&L common stock must take in order to make an objection to the Settlement and/or to appear at the Settlement Hearing.

- 1 -

Exhibit D

00063

You may appear and object by entering an appearance. Any person who does not object in the manner provided for shall be deemed to have waived any objection such person had or may have had to the Settlement and shall forever be barred, in these proceedings or in any other proceeding, from making any objection to or otherwise challenging the Settlement of the Actions, the Stipulation or any provision thereof, the Final Judgment dismissing the *Stouffer* Action, the agreed to Fee and Expense Amount, the Incentive Amount, and/or any other proceedings herein, and shall have no right to appeal therefrom.

PLEASE DO NOT CALL OR WRITE THE COURT OR THE CLERK'S OFFICE FOR INFORMATION.

Exhibit D

00064

# EXHIBIT E

# EXHIBIT E

00066

IN THE FIRST JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

IN AND FOR CARSON CITY

| | |
|---|---|
| LAREW P. STOUFFER, Derivatively on Behalf of L & L ENERGY, INC., | ) Case No. 11 0C 00352 1B<br>)<br>) |
| Plaintiff, | ) Dept. No. I |
| v. | )<br>) |
| DICKSON V. LEE, IAN ROBINSON, ROBERT W. LEE, SHIRLEY KIANG, DENNIS BRACY, SYD S. PENG, EDWARD L. DOWD, JR., ANDREW M. LEITCH, ROBERT A. OKUN, NORMAN MINETA, JOSEPH J. BORICH, JUNG MEI WANG, and DAVID LIN, | ) **[PROPOSED] FINAL JUDGMENT AND**<br>) **ORDER OF DISMISSAL**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants, | )<br>) |
| -and- | )<br>) |
| L & L ENERGY, INC., a Nevada corporation, | )<br>) |
| Nominal Defendant. | )<br>) |

1    This matter came before the Court for hearing, pursuant to the Preliminary Approval

2    Order of this Court dated _____, 2014, on the application of Plaintiff Larew P. Stouffer

3    ("Plaintiff") for approval of the Settlement set forth in the Stipulation of Settlement dated

4    September ___, and the Exhibits thereto (the "Stipulation").  Due and adequate notice having

5    been given to the shareholders of L&L Energy, Inc. ("L&L") as required in the Preliminary

6    Approval Order, and the Court, having considered all arguments made and papers filed and

7    proceedings had herein, and otherwise being fully informed and good cause appearing therefore,

8    IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

9        1.    For purposes of this Final Judgment and Order of Dismissal (the "Judgment") the

10   Court incorporates by reference the definitions in the Stipulation and all capitalized terms used

11   herein shall have the same meanings as set forth in the Stipulation unless otherwise defined

12   herein.

13       2.    This Court has jurisdiction over the subject matter of the *Stouffer* Action,

14   including all matters necessary to effectuate the Settlement, and over all parties to the *Stouffer*

15   Action.

16       3.    The Court finds that the Settlement is in all respects fair, just, reasonable, and

17   adequate to, and in the best interests of L&L, L&L's shareholders, and Plaintiff, and hereby

18   approves the Settlement set forth in the Stipulation.

19       4.    The *Stouffer* Action is hereby dismissed as to all Defendants with prejudice.  The

20   Parties are to bear their own costs, except as set forth in the Stipulation and paragraph 6 herein.

21       5.    The methods of dissemination and publication of the Notice of Pendency and

22   Proposed Settlement of Shareholder Derivative Actions ("Notice") and Summary Notice of

23   Pendency and proposed Settlement of Shareholder Derivative Actions ("Summary Notice") as

24   provided in the Stipulation constituted the best notice practicable under the circumstances to

25   L&L's shareholders and fully satisfied the requirements of Nevada law, due process under the

26   United States Constitution, and any other applicable law, and constituted due and adequate

27   notice to all persons entitled thereto.

28

- 1 -

00067

1     6.     The Court approves the agreed-to Fee and Expense Amount of $795,000 for the

2    payment of Plaintiffs' Counsel's fees and expenses. The Court further finds that Plaintiffs shall

3    be awarded $2,000 each for their participation and efforts in the Actions. Such payments shall

4    be deducted from the Fee and Expense Amount. Payment of the Fee and Expense Amount shall

5    be made in accordance with the terms and subject to the conditions of the Stipulation.

6     7.     Upon the Effective Date, Plaintiffs, L&L, and Current L&L Shareholders shall be

7    deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled,

8    released, discharged, extinguished, and dismissed with prejudice the Released Claims against the

9    Released Persons; provided, however, that such release shall not affect any claims to enforce the

10    terms of the Stipulation or the Settlement.

11     8.     Upon the Effective Date, each of the Released Persons shall be deemed to have,

12    and by operation of the Judgment shall have, fully, finally, and forever settled, released,

13    discharged, extinguished, and dismissed with prejudice all claims (including Unknown Claims),

14    arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement,

15    or resolution of the Action or the Released Claims against Plaintiffs and Plaintiffs' Counsel;

16    provided, however, that such release shall not affect any claims to enforce the terms of the

17    Stipulation or the Settlement.

18     9.     The Court permanently bars and enjoins Plaintiffs, L&L, and Current L&L

19    Shareholders from commencing, prosecuting, instigating or in any way participating in the

20    commencement, prosecution, or instigation of any action asserting any Released Claims, either

21    directly, representatively, derivatively, or in any other capacity, against any Released Person.

22     10.    The Released Persons and any of them may file the Stipulation and/or the

23    Judgment in any action that may be brought against them in order to support a defense or

24    counterclaim based on principles of *res judicata*, collateral estoppel, release, good-faith

25    settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion

26    or similar defense or counterclaim.

27

28                      - 2 -

Exhibit E

11.    Without affecting the finality of this Judgment in any way, the Court hereby retains continuing jurisdiction over the *Stouffer* Action and the Settling Parties for: (i) implementation of the Settlement; and (ii) all other proceedings related to the implementation and enforcement of the terms of the Stipulation and/or the Settlement.

12.    If any of the conditions listed in paragraph 6.1 of the Stipulation are not met, the Stipulation and any Settlement documentation shall be null and void and of no force and effect. In the event that any of the conditions listed in paragraph 6.1 are not met, the Settling Parties shall be restored to their positions on the date immediately prior to the execution date of the Stipulation, the Stipulation shall not be deemed to constitute an admission of fact by any Settling Party, and neither the existence of the Stipulation, nor its contents shall be admissible in evidence or be referred to for any purposes in the Actions or in any litigation or judicial proceeding. Further, all releases delivered in connection with the Stipulation shall be null and void.

13.    In the event that this Judgment is rendered or declared invalid by a court of competent jurisdiction, such invalidation of such part or portion of the Stipulation should not invalidate the remaining portions thereof, and they shall remain in full force and effect.

14.    Neither the Stipulation, nor the Settlement contained therein, nor any of the negotiations or proceedings connected with it, shall be deemed, used or construed as an admission or concession by any of the Defendants in the Actions or by any of the Released Persons, or as evidence of the merits of any of the allegations in the Actions, or of any liability, fault or wrongdoing of any kind. Neither the Stipulation, nor the Settlement, nor any act performed or document executed pursuant to, or in furtherance of the Stipulation or the Settlement, shall be admissible in any proceeding for any purpose, except to enforce the terms of the Stipulation and except that the Released Persons may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment

- 3 -

00069

1  bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or
2  counterclaim.

3      15.    The Court finds that during the course of the Actions, the Settling Parties and
4  their respective counsel at all times acted professionally and in compliance with Nevada Rule of
5  Civil Procedure 11 and Federal Rule of Civil Procedure 11, and all other similar statutes or court
6  rules with respect to any claims or defenses in the Actions.

7      16.    Without further order of the Court, the Settling Parties may agree to reasonable
8  extensions of time to carry out any of the provisions of the Stipulation.

9      17.    The Court directs immediate entry of this final Judgment by the Clerk of the
10 Court.

11                                      * * *

12                                    **ORDER**

13     **IT IS SO ORDERED.**

14

15 DATED: _____          _____
16                                    THE HONORABLE JAMES T. RUSSELL
                                      DISTRICT COURT JUDGE
17

18

19

20

21

22

23

24

25

26

27

28                                     - 4 -

Exhibit E

# EXHIBIT 2

00071

REC'D & FILED

2014 SEP 26 AM 10: 14

ALAN GLOVER
CLERK
BY
DEPUTY

1

2

3

4

5

6

7

8          IN THE FIRST JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

9                            IN AND FOR CARSON CITY

10   LAREW P. STOUFFER, Derivatively on        )   Case No. 11 0C 00352 1B
     Behalf of L & L ENERGY, INC.,             )
11                                             )
                                               )
12              Plaintiff,                      )   Dept. No. I
                                               )
13        v.                                    )
                                               )   [PROPOSED] ORDER PRELIMINARILY
14   DICKSON V. LEE, IAN ROBINSON,             )   APPROVING SETTLEMENT AND
     ROBERT W. LEE, SHIRLEY KIANG,             )   PROVIDING FOR NOTICE
15   DENNIS BRACY, SYD S. PENG,                )
     EDWARD L. DOWD, JR., ANDREW M.            )
16   LEITCH, ROBERT A. OKUN, NORMAN            )
     MINETA, JOSEPH J. BORICH, JUNG MEI        )
17   WANG, and DAVID LIN,                      )
                                               )
18              Defendants,                     )
                                               )
19        -and-                                 )
                                               )
20   L & L ENERGY, INC., a Nevada              )
     corporation,                              )
21                                             )
                Nominal Defendant.             )
22   _____)

23

24

25

26

27

28

1    WHEREAS, a shareholder derivative action is pending before the Court[1] under the

2    caption *Stouffer v. Lee*, Case No. 11 0C 00352 1B;

3    WHEREAS, related shareholder derivative actions are pending under the captions

4    *Bessent v. Lee*, Case No. 13-2-36158-2 KNT (Wash. Super. Ct. filed Oct. 23, 2013); *Finklestein*

5    *v. Lee*, Case No. 2:13-cv-02197RSL (W.D. Wash. filed Dec. 9, 2013); and *Giesbrecht v. Lee*,

6    Case No. 3:13-CV-00697-HDM-WGC (D. Nev. filed Dec. 20, 2013).

7    WHEREAS, the Plaintiff Stouffer has made an application for an order: (i) preliminarily

8    approving the proposed Settlement of the Actions in accordance with the Stipulation of

9    Settlement (the "Stipulation"), which, together with the Exhibits annexed thereto, sets forth the

10   terms and conditions for the proposed settlement and dismissal of the Actions with prejudice (the

11   "Settlement"); (ii) approving the form and manner of the notice described in the Stipulation; and

12   (iii) setting a date for the Settlement Hearing before the Court to determine whether the proposed

13   Settlement should be finally approved;

14   WHEREAS, the Court having considered: (i) the Plaintiff's Unopposed Motion for

15   Preliminary Approval of Settlement together with the accompanying Memorandum of Law; (ii)

16   the Stipulation, as well as the Exhibits attached thereto; and (iii) the arguments by counsel for the

17   Parties in favor of preliminary approval of the Settlement; and

18   WHEREAS, the Court finds, upon a preliminary evaluation, that the proposed Settlement

19   falls within the range of possible approval criteria, as it provides a beneficial result for L&L and

20   appears to be the product of good-faith, informed, and non-collusive negotiations between

21   experienced and able counsel for the Parties.

22   NOW, THEREFORE, UPON GOOD CAUSE SHOWN, IT IS HEREBY ORDERED as

23   follows:

24

25   _____

26   [1] Except as otherwise expressly provided below or as the context otherwise requires, all
     capitalized terms contained herein shall have the same meanings and/or definitions as set forth in

27   the Stipulation of Settlement dated September 19, 2014 (the "Stipulation").

28
                                                    - 1 -

Exhibit B

1     1.    The Court does hereby preliminarily approve the Settlement as set forth in the

2   Stipulation, subject to further consideration at the Settlement Hearing described below.

3     2.    Pending the Court's determination as to final approval of the Settlement,

4   Plaintiffs, L&L, and all Current L&L Shareholders are barred and enjoined from commencing,

5   prosecuting, instigating, or in any way participating in the commencement or prosecution of any

6   action asserting any Released Claim against any of the Released Persons.

7     3.    The Settlement Hearing shall be held before this Court, on _December 4_,

8   2014, at _9:00_ ̸a.m., in the First Judicial District Court of Nevada in and for Carson City, located

9   at 885 East Musser Street, Department I, Carson City, Nevada 89701, to determine: (i) whether

10  the Settlement of the Actions on the terms and conditions provided for in the Stipulation is fair,

11  reasonable, and adequate to Current L&L Shareholders and to L&L and should be approved by

12  the Court; (ii) whether the *Stouffer* Action should be dismissed with prejudice; and (iii) whether

13  the Court should approve the Fee and Expense Amount and the Incentive Amount.

14    4.    The Court approves, as to form and content, the Notice of Pendency and Proposed

15  Settlement of Shareholder Derivative Actions ("Notice") and the Summary Notice of Pendency

16  and Proposed Settlement of Shareholder Derivative Actions ("Summary Notice") and finds that

17  the provisions of the Notice and Summary Notice, substantially in the manner and form set forth

18  in Exhibits C and D, respectively, to the Stipulation, meets the requirements of Nevada law and

19  due process, is the best notice practicable under the circumstances, and shall constitute due and

20  sufficient notice to all Persons entitled thereto.  Non-material changes to the form of Notice and

21  Summary Notice may be made without further approval of the Court.

22    5.    Not later than ten calendar days after the entry of this Order, L&L shall issue a

23  press release announcing the Settlement, including instructions to Current L&L Shareholders on

24  how to access the Notice and Stipulation, and referring Current L&L Shareholders to the

25  websites of Robbins Arroyo LLP, Levi & Korsinsky LLP, Gainey McKenna & Egleston,

26  Harwood Feffer LLP, and L&L for more information.

27

28

- 2 -

Exhibit B

6.     Not later than ten calendar days after the entry of this Order, Robbins Arroyo LLP, Levi & Korsinsky LLP, Gainey McKenna & Egleston, and Harwood Feffer LLP shall post copies of the Notice and the Stipulation on their firms' websites.

7.     Not later than ten calendar days after the entry of the Preliminary Approval Order, L&L shall post copies of the Notice and this Stipulation on its website.

8.     Not later than ten calendar days after the entry of this Order, L&L shall cause the Summary Notice to be published once in the *Investor's Business Daily*.

9.     L&L's insurer shall be responsible for the reasonable and necessary costs of publishing the Summary Notice.  If the Court requires additional notice, the reasonable and necessary costs of such additional notice will be borne by L&L through its insurer.

10.     Not later than seven calendar days prior to the Settlement Hearing, Defendants' counsel and Plaintiffs' Counsel shall serve on counsel in the Actions and file with the Court an appropriate affidavit or declaration with respect to posting and publishing the Notice and Summary Notice.

11.     All papers in support of the Settlement, the Fee and Expense Amount, and the Incentive Amount shall be filed with the Court and served at least twenty-one calendar days before the date of the Settlement Hearing

12.     All papers in response to any Current L&L Shareholder objections shall be filed with the Court and served at least seven calendar days before the date of the Settlement Hearing.

13.     Any Current L&L Shareholder who wishes to object to the Settlement may appear and show cause, if he, she, or it has any reasons why the Settlement should not be finally approved as fair, reasonable, and adequate, or why the Judgment should not be entered thereon, or why the Fee and Expense Amount or Incentive Amount should not be finally approved; provided, however, that no Current L&L Shareholder shall be heard or entitled to contest the approval of the terms and conditions of the Settlement or, if approved, the Judgment to be entered thereon approving the same, or the Fee and Expense Amount or Incentive Amount, unless that Current L&L Shareholder has filed with the Clerk of the Court and delivered by hand or sent by first class mail to Plaintiffs' Counsel and Defendants' Counsel, a written objection to

- 3 -

Exhibit B

the Settlement setting forth: (a) such Person's or entity's name, legal address, and telephone number, along with a representation as to whether such Person or entity intends to appear to be heard at the Settlement Hearing; (b) a statement of the reason(s) for the objection; (c) proof of ownership of L&L common stock as of September 19, 2014, the date of execution of the Stipulation through the date of the Settlement Hearing, including the number of shares of L&L common stock and the date of purchase; (d) any documentation in support of such objection; and (e) if the Current L&L Shareholder has indicated that he, she, or it intends to appear and requests to be heard at the Settlement Hearing, the identities of any witnesses the shareholder intends to call at the Settlement Hearing and a statement as to the subjects of their testimony. Any such objections must be filed with the Court and received by the following counsel at the addresses below no later than *fourteen calendar days prior to the Settlement Hearing*:

> The Court:
> Clerk of the Court
> FIRST JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA
> IN AND FOR CARSON CITY
> 885 East Musser Street, Suite 3031
> Carson City, NV 89701
>
> Plaintiffs' Counsel:
>
> ROBBINS ARROYO LLP
> Kevin A. Seely, Esq.
> 600 B Street, Suite 1900
> San Diego, CA 92101
>
> Counsel for Defendants:
>
> ARMSTRONG TEASDALE, LLP
> RICHARD G. CAMPBELL
> 50 West Liberty, Suite 950
> Reno, NV 89501

14. Any Current L&L Shareholder who does not make his, her, or its objection in the manner provided herein shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the Settlement or the Fee and Expense Amount or Incentive Amount as incorporated in the Stipulation, unless otherwise ordered by the Court, but shall otherwise be bound by the Judgment to be entered and the releases to be given.

- 4 -

Exhibit B

1    15. L&L and all Current L&L Shareholders (and his, her, or its successors,

2    predecessors, and assigns) shall be bound by all orders, determinations, and judgments in the

3    *Stouffer* Action concerning the Settlement.

4    16. If the Settlement does not become Final for any reason, the Settlement and the

5    settlement documents shall be null and void and of no force and effect. In such event, the

6    Settling Parties shall return to their respective litigation positions in the *Stouffer* Action as of the

7    time immediately prior to the date of the execution of the Stipulation, as though it were never

8    executed or agreed to, and the Stipulation shall not be deemed to prejudice in any way the

9    positions of the Settling Parties with respect to the *Stouffer* Action, or to constitute an admission

10   of fact by any Settling Party, shall not entitle any Settling Party to recover any costs or expenses

11   incurred in connection with the implementation of the Stipulation or the Settlement, and neither

12   the existence of the Stipulation nor its contents shall be admissible in evidence or be referred to

13   for any purposes in the *Stouffer* Action, or in any litigation or judicial proceeding, other than to

14   enforce the terms therein.

15   17. All proceedings in the *Stouffer* Action, except for those proceedings related to the

16   Settlement, shall be stayed until the resolution of all Settlement-related proceedings.

17   18. The Court may adjourn the Settlement Hearing or modify any other dates set forth

18   herein without further notice to Current L&L Shareholders, and retains jurisdiction to consider

19   all further applications arising out of or connected to the Settlement. The Court may approve the

20   Settlement, with such modifications as may be agreed to by the Settling Parties, if appropriate,

21   without further notice to the Current L&L Shareholders.

22                                              *  *  *

23       IT IS SO ORDERED.

24   DATED: September 26, 2014                    _____

25                                               THE HONORABLE JAMES T. RUSSELL
                                                 DISTRICT COURT JUDGE
26

     956140
27

28

00077

Exhibit B